CLARA LOUISE FLINN, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 84483, 84484, 84485, 84486, 84487, 84488, 84489, 84490, 84491.

Promulgated June 21, 1938.

---

[1] Proceedings of the following petitioners are consolidated herewith: Louise Flinn Wainwright; George H. Flinn, Jr.; Lawrence Flinn; The Colonial Trust Company and George H. Flinn, Jr., Executors, Estate of George H. Flinn, Deceased; The Colonial Trust Company, Trustee, Trust under the will of George H. Flinn for Clara Louise Flinn; The Colonial Trust Company, Trustee, Trust under the will of George H. Flinn for Louise Flinn Wainwright; The Colonial Trust Company, Trustee, Trust under the will of George H. Flinn for George H. Flinn, Jr.; and The Colonial Trust Company, Trustee, Trust under the will of George H. Flinn for Lawrence Flinn.

*Allin H. Pierce, Esq., Chester L. Wallace, Esq., John O. Wicks, Esq.,* and *Will R. Gregg, Esq.,* for the petitioners.

*John E. Marshall, Esq., Leonard C. Mitchell, Esq.,* and *Harold D. Thomas, Esq.,* for the respondent.

OPINION.

STERNHAGEN: 1. The estate of George H. Flinn, deceased, in Docket No. 84487, contested the Commissioner's determination that its gross income for 1933 should include profit of $16,357.38 and its deductions should exclude one of $47,635.46. The parties have agreed that the $16,357.38 should be excluded from income and the $47,-635.46 should be excluded from deductions; and the computation of deficiency will be made on that basis.

2. Docket Nos. 84488–84491 are proceedings instituted by the trustee of the four trusts created under the will for the widow and three children, respectively. They are four separate taxpayers, but each proceeding involves the same two issues, one assailing the Commissioner's determination and the other raised by the respondent's affirmative amended answer. The considerations are common to all four cases.

By the will, the residuary estate was left to the trusts. For the reasons set forth in the findings, the executors withheld distribution, and there has been long delay in the settlement of the estate. In 1933 a plan for handling the corporation's shares was worked out which would meet the fiduciary demands of the trustee, the practical demands of the business, and the sentimental demands of the Flinn family. The surplus was capitalized, the shares increased, and a stock dividend declared, which facilitated a proportionate distribution among the trust beneficiaries without impairing the intact value of corpus to be retained by the fiduciary, and at the same time relieved the fiduciary of undue responsibility for the risks of the contracting business. Thereupon, to free the fiduciary completely from the business, the shares retained by it were bought by the corporation for $951,560.45, which is no more than their fair market value when received.

The Commissioner's determination rests upon the view that the corporation's purchase from the trustee was a cancellation or redemption of its shares essentially equivalent to a dividend and taxable as such under Revenue Act of 1932, section 115, subdivision (g).[2] This view is defended by respondent here on the ground, as stated in his brief, that:

\* \* \* The facts clearly establish that there was a premeditated plan or artifice on the part of the petitioners in connection with the entire transaction and that the element of tax avoidance motivated them \* \* \*. The

---

[2] (g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

circumstances surrounding the redemption and reduction of the stock in time and manner clearly indicate and evidence a continuing plan to effect by that means a distribution of corporate earnings freed from the usual incident of tax upon ordinary dividends. The whole scheme was in fact an anticipatory arrangement to circumvent the tax.

The evidence clearly refutes this and establishes affirmatively the contrary. While it shows that the capitalization of earnings and the stock dividend were actuated primarily by a demand other than that of the corporation's own business, it shows equally clearly that the motive was to provide a means of avoiding a forced complete liquidation of a successful business and yet to conform to the fiduciary's demand for safety and the requirements of the Pennsylvania law of apportionment. Indeed an inclination to reduce or avoid income tax while distributing earnings can be found nowhere in the evidence.

If the motive be left aside as not necessarily controlling, there is still an absence of such manner of distribution as to be essentially equivalent to a dividend. The statutory concept of dividend is a distribution out of earnings and profits, and normally it is proportionate to shares and leaves the shareholder holding his shares as his capital investment. Complete and partial liquidations are treated, for the purpose of the statute, as sales with a consequent measure of gain or loss, even though the proceeds may to some extent be derived from earnings. *Hellmich* v. *Hellman*, 276 U. S. 233. Here there was a complete liquidation of the holdings of but one shareholder owning a minority of the shares. The purpose was not to distribute earnings, but to bring about a separation of this one shareholder from the corporation. The remaining shareholders remained substantially unchanged in their relation to the corporation and its earnings. The shares purchased from the trustee by the corporation were not only those distributed to it as a stock dividend, but also those which this shareholder held as its intact investment. The only fact to give the purchase the semblance of a statutory dividend is that money went to a shareholder which to some extent could be traced to earnings. This is, in our opinion, less than enough to establish the essential equivalent of a dividend when considered in all the circumstances.

The Commission was in error in his determination that section 115, subdivision (g), was applicable.

3. The respondent, by an amended answer, affirmatively pleads that of the $951,560.45 received by the trustee from the corporation, $625,064.85 is properly to be treated as gain. Although there is no substantial room for doubt that the 4,160.3537 shares which were in effect received by the trustee on December 27, 1933, by way of distribution from the executors of the decedent's estate, were worth $951,560.45 when received, thus indicating no gain when they were

sold, the respondent pleads affirmatively that the basis to be used in computing gain is not the value of the shares when actually received by the trustee, but the value on January 30, 1931, when they are said to have been constructively received because they should have been actually received. The argument runs that the executors were in position to close and distribute the estate on the earlier date, and that their failure to do so was so capricious and unreasonable that it should not be recognized for present purposes.

The evidence, however, fails to substantiate this affirmative contention. As appears at length in the findings, there was sound and respectable reason for the trustee to resist distribution in specie of the corporation's stock. The corporation's business was hazardous and the trustee might reasonably contemplate the necessity for a long period of protecting the interests of minors and unborn children. There were other difficulties in the way of ready and prompt liquidation and of the administration of the assets, but the well founded reluctance of the fiduciary in regard to the corporate shares is enough. There is nothing to support a suspicion that the executors and the trustee or beneficiaries were conspiring to raise the value of the corporate shares in order to reduce the gain and the resulting tax. The respondent has therefore failed to support the constructive receipt by the trustee in 1930 upon which his reduction in basis and increase in gain is built.

4. As to the four individuals who are beneficiaries of the trusts established by the will (Docket Nos. 84483-84486), the Commissioner, following his view that the $951,000 paid by the corporation for the 4,160 shares was properly to be regarded as a taxable dividend under section 115 (g), held further that such amount constituted distributable income of the trusts and is, therefore, properly taxable to the individual beneficiaries of the trusts under section 162, Revenue Act of 1932. Actually the amount thus received by the trustee was retained as the intact value which it was not at liberty to distribute. It has been invested and continues to be held by it. No part has been distributed to the beneficiary petitioners. The decision that section 115 (g) is inapplicable carries with it the decision that no part of the $951,000 may be regarded as distributable income of the trusts and no part thereof may be taxed to the individual beneficiaries.

5. Petitioner Clara Louise Flinn, the widow, in fact received $22,500 on January 4, 1933, and $32,400 on December 14, 1933. These amounts can not from the record be clearly identified except that they were received by her from the trustee. Whether they were received as income from the trust separately set up for her or to any extent as income from any of the trusts for the children, to be used as provided in the will for their maintenance and benefit, has not

been and can not be found. The distribution of $22,500 appears to have been made out of trust income of earlier years and is not properly taxable at the time of actual distribution in 1933. With regard to the later distribution of $32,400, nothing appears which would require the exclusion of any part from her individual 1933 income. The Commissioner's determination must, therefore, be sustained in whatever treatment he gave to the $32,400, and must be reversed as to the earlier distribution of $22,500, which was taxable in an earlier year.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*