COMMISSIONER OF INTERNAL REV-
ENUE v. ROBERTS et al.

No. 6538.

United States Court of Appeals,
Fourth Circuit.

Argued March 17, 1953.

Decided April 7, 1953.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Lee A. Jackson, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Stanley Worth, Washington, D. C. (Edward S. Smith, Washington, D. C., on the brief), for respondents.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue to review a decision of the Tax Court of the United States. The Tax Court held that the distribution in connection with the redemption of the stock of the corporation, *under the circumstances of this case*, was not essentially equivalent to, and not taxable as, the distribution of a dividend under section 115(g) of the Internal Revenue Code. We think the decision of the Tax Court was clearly erroneous. It must, therefore, be reversed.

We quote the applicable provisions of the Internal Revenue Code and Treasury Regulations:

"Internal Revenue Code:

"§ 115. Distributions by corporations

. * * * * * *

"(g) *Redemption of stock.* * * * If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

26 U.S.C. 1946 ed., Sec. 115.

Treasury Regulations 111, promulgated under the Internal Revenue Code:

S53. 29.115-9. *Distribution in Redemption or Cancellation of Stock Taxable as a Dividend.*—If a corporation cancels or redeems its stock (whether or not such stock was issued as a dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the

distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. A bona fide distribution in complete cancellation or redemption of all of the stock of a corporation, or one of a series of bona fide distributions in complete cancellation or redemption of all of the stock of a corporation, is not essentially equivalent to the distribution of a taxable dividend. If a distribution is made pursuant to a corporate resolution reciting that the distribution is made in liquidation of the corporation, and the corporation is completely liquidated and dissolved within one year after the distribution, the distribution will not be considered essentially equivalent to the distribution of a taxable dividend; in all other cases the facts and circumstances should be reported to the Commissioner for his determination whether the distribution, or any part thereof, is essentially equivalent to the distribution of a taxable dividend."

There is little or no dispute about the facts of this case. In March, 1932, John T. Roberts, hereinafter called taxpayer, and his brother transferred to a newly created corporation all of the assets of a wholesale plumbing and heating supply business, theretofore conducted by them in partnership, in exchange for all of the stock of the corporation, consisting of 2,000 shares of common stock, par value $100 each. Fifteen hundred shares were issued to taxpayer, who continued to hold them through the taxable year 1944 here involved. Five hundred shares were issued to taxpayer's brother. Taxpayer's brother died in October, 1943, and by his last will made a specific bequest to taxpayer of any shares of stock of the corporation owned by him at the time of his death. Pursuant to an order of the probate court, the executor of the brother's will transferred to taxpayer stock certificates for the 500 shares of the corporation's stock which the brother had owned. These 500 shares were valued for estate tax purposes at $92,000.

During the war the business of the corporation was adversely affected by Government regulations, and during the period 1941 to 1944 the difficulties of operating increased. Gross sales in 1939 were roughly $771,000; increased to $1,677,000 in 1941; and dropped in succeeding years to a low of $400,000 in 1944. Adjusted net income (that is, prior to taxes) amounted to roughly $28,000 in 1939; $47,000 in 1940; $63,000 in 1941; $106,000 in 1942; $49,000 in 1943, and $13,000 in 1944.

On January 1, 1944, total assets amounted to approximately $414,000 (including cash of $160,000 and United States obligations of $96,000), and the earned surplus amounted to approximately $170,000. As of December 31, 1944 (that is, after the distribution in redemption of stock here involved), the corporation's balance sheets showed assets of $320,000 (including cash of $60,000 and United States obligations of $106,000) and an earned surplus of $135,000.

The corporation paid a dividend of $4 a share in 1934; $16 in 1935; $8 in each year 1936 through 1940; $6 in 1941; and no dividends in 1942 and 1943. In 1944, after the stock redemption hereinafter mentioned, a dividend of $2 was distributed. In 1944 taxpayer also was paid a salary of $27,900 by the corporation as its president.

On December 26, 1944, at a special meeting of the corporation's board of directors, on motion of taxpayer, it was resolved that the corporation purchase from taxpayer for $92,000 the 500 shares of stock which taxpayer had acquired by bequest from his brother, and that the capital stock of the corporation be reduced to 1,500 shares, par value $100. On the same day, a special meeting of the stockholders (namely, taxpayer, for he then owned all the shares of stock in this corporation,) approved; the transaction was completed; and an amend-

ment to the certificate of incorporation was executed which was later approved by the State Tax Commission. Taxpayer never considered selling his shares to anyone but the corporation because he wanted to keep the stock in the family.

The taxpayer did not report the transaction in controversy on his return, and the Commissioner determined a deficiency on the ground that the amount of $92,000 paid by the corporation was taxable as a dividend.

The Tax Court specifically found that the earnings and profits of the corporation prior to and during 1944 were accumulated for no definite purpose; that the operations of the corporation were not impaired by reason of the transaction in controversy, and that the corporation had never followed a policy of contraction of business; that the corporation's financial position on December 26, 1944, permitted of a dividend of $92,000, and that the corporation continued in the same business in subsequent years.

The Tax Court further found that the payment of the $92,000 to taxpayer by the corporation in the taxable year was a distribution in complete cancellation and redemption of all of that portion of the corporation's stock bequeathed by taxpayer's brother, constituting a partial liquidation, and not the essential equivalent of the distribution of a taxable dividend.

We cannot agree with the holding of the Tax Court that, as of the time of the stock redemption, the stock acquired by taxpayer which was redeemed, must be regarded as the stock of the brother. This runs absolutely counter to reality. This stock had been the brother's; but, months before the redemption, taxpayer's title to this stock had been completely perfected. See, Matthews v. Turner and Woodyard, 64 Md. 109, 121, 21 A. 224.

The vital thing here, as we see it, is that, by the redemption of this stock, the *essential relation* of the taxpayer to the corporation was not, in any practical aspect, changed. Before the redemption, he was the sole stockholder in the corporation;

after the redemption, he was still the sole stockholder. Of what real consequence was it that before the redemption his sole ownership was divided into 2,000 shares, and after the redemption, this same sole ownership was divided into 1,500 shares: He owned the whole corporation before the redemption; after the redemption, he was still the sole owner.

Here, then, we find a single individual owning all the corporate stock. Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937; Bazley v. Commissioner, 3 Cir., 155 F.2d 237, 239, affirmed 331 U.S. 737, 67 S. Ct. 1489, 91 L.Ed. 1782. The corporation had on hand a large and unnecessary accumulation of cash, representing "earnings or profits accumulated after February 28, 1913." Hirsch v. Commissioner, 9 Cir., 124 F.2d 24, 29. The corporation did not then intend to liquidate or to contract its business. Rheinstrom v. Conner, 6 Cir., 125 F.2d 790, 793, certiorari denied 317 U.S. 654, 63 S.Ct. 49, 87 L.Ed. 526. The redemption served no business purpose of the corporation; it was motivated entirely by the personal considerations of taxpayer. Commissioner v. Snite, 7 Cir., 177 F.2d 819; Smith v. United States, 3 Cir., 121 F.2d 692, 695. The net effect of the redemption was clearly to distribute to taxpayer the corporate earnings just as if a cash dividend had been declared. Kirschenbaum v. Commissioner, 2 Cir., 155 F.2d 23, 170 A.L. R. 1389, certiorari denied 329 U.S. 726, 67 S.Ct. 75, 91 L.Ed. 628; Hyman v. Helvering, 63 App.D.C. 221, 71 F.2d 342, certiorari denied 293 U.S. 570, 55 S.Ct. 100, 79 L.Ed. 669. See, also, Nolan, "The Uncertain Tax Treatment of Stock Redemptions: A Legislative Proposal, 65 Harv.L.Rev. 255; Pedrick, "Some Latter Day Developments in the Taxation of Liquidating Distributions," 50 Mich.L.R. 529. Indeed, it is difficult to imagine a more ideal set-up for the application of Section 115(g) than the facts involved in the instant case.

The cases of Flinn v. Commissioner, 37 B.T.A. 1085 and Tiffany v. Commissioner, 16 T.C. 1443, cited by the Tax Court are clearly not in point. There, the corporations purchased all of the stock of a par-

ticular stockholder, when there were still other stockholders; here, the corporation merely purchased part of the stock of its sole stockholder. There, the relationship of the stockholder to the corporation was radically changed by the redemption, from stockholder to mere ex-stockholder; here, as we have pointed out, there was no such change for, both before and after the redemption taxpayer was and remained the sole stockholder of the corporation.

The ultimate question of whether, in a particular case, section 115(g) does or does not apply, is usually held to be a question of fact. Boyle v. Commissioner, 3 Cir., 187 F.2d 557, certiorari denied 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618; Commissioner v. Cordingley, 1 Cir., 78 F.2d 118; Hill v. Commissioner, 4 Cir., 66 F.2d 45.

The Regulations, which have been in effect for many years, provide in part that a redemption by a corporation of a portion of its stock *pro rata* among all the shareholders would generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. That provision of the Regulations is fully met in this case, and likewise other factors which have sometimes been held relevant are also present here.

It might be noted that while dividends were paid by the corporation here prior to 1942, no dividends were paid by the corporation in 1942, 1943, or 1944 prior to redemption, though the corporate earnings in all these years were quite substantial.

Any conclusion other than that which we have reached readily shows how easily the tactics of the taxpayer here could be used as a means of tax evasion. A prosperous corporation, for example, with a single stockholder, earns large sums of money, available for, and which should be paid out as, dividends. This sole stockholder siphons off this money (as was done in the instant case) to himself by selling a portion of his stock to the corporation at a price per share which will just cover these earnings. Surely, this is a redemption "es-

sentially equivalent to the distribution of a taxable dividend." Congress must have had just such a situation in mind when it enacted section 115(g). See cases previously cited and compare, decided by our Court, Wall v. United States, 4 Cir., 164 F.2d 462.

The decision of the Tax Court of the United States is reversed and the case is remanded with directions to enter a decision in favor of the Commissioner.

Reversed and remanded with directions.