**KEEFE, Collector v. COTE.**

No. 4783.

United States Court of Appeals
First Circuit.

June 18, 1954.

Davis W. Morton, Jr., Sp. Asst. to
Atty. Gen., Washington, D. C. (H. Brian

Holland, Asst. Atty. Gen., Ellis N. Slack and Carolyn R. Just, Sp. Assts. to Atty. Gen., and Robert D. Branch, Asst. U. S. Atty., Concord, N. H., on brief), for appellant.

Stanley M. Brown, Manchester, N. H. (McLane, Davis, Carleton & Graf, Manchester, N. H., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal by the Collector of Internal Revenue for the collection district of New Hampshire from a judgment entered on a verdict for the plaintiff in a suit to recover a deficiency in income tax for the calendar year 1944 assessed against the plaintiff-taxpayer in May 1950 and paid by him with interest thereon in June of that year. The question presented is whether 248 shares of stock in Cote Brothers, Inc. held by the taxpayer in 1944, and in that year transferred to the corporation which thereafter held them as treasury stock, were thereby "cancelled or redeemed," and if so, whether the payment in exchange out of the corporation's earnings and profits was made "at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend" under § 115 (g) of the Internal Revenue Code, 26 U. S.C.A. § 115(g), quoted hereafter in the margin.

The following basic facts are not in dispute.

Cote Brothers, Inc., is a New Hampshire corporation which has been engaged in the business of baking bread since its organization in the early 1920's. Its shares have always been closely held by members of the Cote family, and the taxpayer, Onil, has been a stockholder and an executive officer of the corporation from its beginning. In 1934 he became the majority stockholder by purchasing his mother's stock, for which he gave his note, and in 1936, following a contest with minority stockholders, he assumed full management and control of the corporation.

His salary for 1936 computed at the end of the year on the basis of the corporation's sales amounted to $31,302.43. He was not, however, paid that amount in cash. Instead, because of the corporation's cash position, he took $6,500 in cash and a note of the corporation bearing interest at 5% per annum for the balance of $24,802.42.[1] He nevertheless reported his entire salary in his income tax return for that year.

Late in 1936, or early in 1937, the corporation purchased and retired 150 shares belonging to the taxpayer's aunt and her family, and in June 1937, the corporation capitalized its surplus by declaring and paying a stock dividend of five shares for one. At this point one Conrad LaForce owned 102 shares, one Robert Cote owned 12 shares, and the taxpayer owned 1512 shares. Then, at the end of 1937, it was decided that the presence on the corporation's books of the note for $24,802.42 payable to its principal officer and stockholder reflected adversely on the corporation's credit standing, so on December 22, of that year the note was surrendered and cancelled and the corporation issued to the taxpayer in exchange a certificate for 248 shares, par value $100, and gave him the balance of $2.42 in cash. As a result the taxpayer owned 1760 of 1874 shares outstanding, or 93.9% of the stock of the corporation.

Stock ownership in Cote Brothers, Inc., thereafter remained static until 1944. On July 10 of that year the corporation purchased LaForce's 102 shares for its treasury for which it paid $4 more than estimated book value, or $196 per share, making a gross payment of $20,000. And two days later on July 12 the corporation purchased and also put into its treasury the 248 shares issued to the taxpayer in December 1937. It did not,

---

**1.** The obvious discrepancy of one cent is not explained and can be ignored.

however, pay the same price for these shares. Instead it gave its note for $32,-000 to the taxpayer's mother, that being the balance the taxpayer owed his mother on the note he had given in 1934 for the purchase of her stock, and paid the taxpayer $240 in cash.

The taxpayer reported this transaction in the capital gain and loss schedule of his return for 1944 wherein he disclosed a sale for $32,240 of an asset having a cost basis of $24,800, for a capital gain of $7,440 and a net capital gain of one half that amount or $3,720. This return was filed on March 14, 1945. Two years later the return was audited and on October 10, 1947 an additional assessment was made for a claimed deficiency resulting from the Commissioner's disallowance of a capital loss taken by the taxpayer on the sale of his summer camp. This deficiency, which was paid, arose out of a transaction having nothing whatever to do with the stock transaction described above which at that time went unquestioned. Later, however, another agent audited the return as a result of

which the Commissioner determined that the entire $32,240 paid for the stock in 1944 should have been included in the taxpayer's gross income for that year. Notice of this claimed deficiency was sent to the taxpayer on February 18, 1950, more than three but just short of five years after the return was filed.

The Collector contends here, and made his contention below by moving for a directed verdict at the close of the evidence and later for judgment notwithstanding the verdict and for a new trial, that on the facts he is entitled to judgment as a matter of law. That is to say, he contends that the only conclusion possible on the facts is that the stock was redeemed and that the payment for the stock, admittedly out of earnings or profits accumulated by the corporation after February 28, 1913, was made at such time and in such manner as to make the distribution and cancellation or redemption of the stock essentially equivalent to the distribution of a taxable dividend within the meaning of § 115(g) of the Internal Revenue Code.[2]

2. Section 115 as it stood in 1944 so far as here material reads as follows:

"§ 115. Distributions by corporations

"(a) *Definition of dividend*. The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *

"(b) *Source of distributions*. For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

"(c) [As amended by Section 147 of the Revenue Act of 1942, c. 619, 56 Stat. 798] *Distributions in liquidation*. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in

part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * *

* * * * *

"(g) *Redemption of stock*. If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

* * * * *

"(i) *Definition of partial liquidation*. As

Section 115(g) categorically requires for its application that a corporation either cancel or redeem its stock. Clearly the 248 shares in Cote Brothers, Inc., issued to Onil Cote in 1937 and bought back from him by the corporation in 1944 were not "cancelled," for they were held thereafter for years in the corporate treasury, perhaps for reissue at some later date if the occasion should arise, perhaps not; we do not know for the corporation at the time of reacquisition had no plan one way or the other. The only question at this point is whether the shares were "redeemed" in 1944, and different views have been expressed as to whether shares in a corporation purchased by it for its treasury have been "redeemed" in the statutory sense.

In Alpers v. Commissioner, 2 Cir., 1942, 126 F.2d 58, 61, a majority of the court held that a corporation's shares purchased by it and held in its treasury were neither cancelled nor redeemed. Judge Learned Hand, however, dissented. He said that while he agreed that such shares were not "cancelled," "redeemed" is a "somewhat less formal word" and ought to cover situations in which shares were not "cancelled." He thought it would not do the word "redeemed" "too much violence to make it cover 'treasury shares,' which are—at least colloquially speaking—certainly 'redeemed'; especially since, if we do not so construe it, the apparent purpose of the statute is not fully realized." In recent years Judge Learned Hand's view has been adopted in the Third and Fourth Circuits. Boyle v. Commissioner, 1950, 187 F.2d 557, 561, certiorari denied, 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618. Wall v. United States, 1947, 164 F.2d 462, 465. We also adopt his view on his reasoning and on the reasoning of the cases last cited. It does not follow, however, that we necessarily disagree with Commissioner of Internal Revenue v. Snite, 7 Cir., 1949, 177 F.2d 819 for in that case the corporation involved purchased its own shares and held them in its treasury only temporarily as part of a preconceived plan to resell the shares to its employees.

This brings us to the basic inquiry on this appeal which is whether the District Court properly submitted to the jury the question whether the payment made by Cote Brothers, Inc., of $32,240 to Onil Cote for his stock was made "at such time and in such manner" as to be "essentially equivalent to the distribution of a taxable dividend."

The time of the payment, July 12, 1944, bore no relation to any accounting period of the corporation. But this is not important for dividends no doubt can be declared at any time a corporation may see fit to do so. The phrase "at such time" in the statute we think means no more than at a time when it would be appropriate for a corporation to declare a dividend, which, ordinarily but perhaps not necessarily, would be when a corporation has accumulated earnings or profits to distribute, as Cote Brothers, Inc., had at the time it bought back the taxpayer's block of 248 shares.

The manner of the payment, *i. e.* by giving the taxpayer's mother an interest-bearing promissory note in extinguishment of an antecedent debt of the taxpayer to his mother, is not, certainly, an ordinary or usual "manner" of paying a dividend. This does not, however, render § 115(g) inapplicable, for the payment conferred a direct financial benefit upon the taxpayer equivalent for tax purposes to a payment of money which he in turn used to pay his debt. Wall v. United States, supra, 164 F.2d at page 464 and

used in this section the term 'amounts distributed in partial liquidation' means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

"(j) *Valuation of dividend.* If the whole or any part of a dividend is paid to a shareholder in any medium other than money the property received other than money shall be included in gross income at its fair market value at the time as of which it becomes income to the shareholder. * * *"

cases cited. The unorthodox manner of the payment is thus without tax consequences.

■ The determinative question is whether the payment here involved was "essentially equivalent" to the distribution of a "taxable dividend" as defined in § 115(a). Thus section 115(g) requires a factual comparison of the particular distribution in question with distributions which are dividends under § 115 (a) as distinguished from distributions under § 115(c) in either complete or partial liquidation as defined in § 115(i).[3] This obviously poses a question of fact, as the cases unanimously hold and the applicable Treasury Regulation quoted in material part in the margin clearly recognizes.[4] And it is now generally accepted that the question is to be resolved by determining whether the distribution had the "net effect" of the payment of a taxable dividend. The late Chief Justice Vinson when a member of the Court of Appeals for the District of Columbia enunciated this principle in Flanagan v. Helvering, 1940, 73 App.D.C. 46, 116 F. 2d 937, 939–940 wherein he said that " * * * the net effect of the distribution rather than the motives and plans of the taxpayer or his corporation, is the fundamental question in administering § 115(g)." See Smith v. United States, 3 Cir., 1941, 121 F.2d 692, 696; Hirsch v. Commissioner, 9 Cir., 1941, 124 F.2d 24, 29; Commissioner of Internal Revenue v. Snite, 7 Cir., 1949, 177 F.2d 819, 822; Boyle v. Commissioner, 3 Cir., 1951, 187 F.2d 557, 560, certiorari denied 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618.

Logically, a redemption of its stock by a corporation is "essentially equivalent to the distribution of a taxable dividend," i. e. has the "net effect" of the distribution of a taxable dividend, whenever the practical result of the transaction is to distribute accumulated earnings essentially *pro rata* among the shareholders while leaving the ownership of the corporation basically the same and when the distribution is not connected with a partial liquidation of the assets of the corporation. See Bittker and Redlich, Corporate Liquidations and the Income Tax, 5 Tax Law Review 437, 465 et seq. There is no suggestion that the distribution here under consideration had any connection with a partial liquidation of the assets of Cote Brothers, Inc. On the contrary, the corporation's business was constantly expanding over the years involved. Nor can there be any doubt that corporate ownership was not in any substantial way affected by the transaction. The taxpayer was practically the sole stockholder both before and after the redemption. And, although the distribution was not *pro rata,* it was practically or essentially so in view of the very high percentage of the taxpayer's stock holdings. Thus, under the strict logic of the test it would be very

3. The Court of Appeals for the Second Circuit in 1938 took the extreme position in Patty v. Helvering, 98 F.2d 717, that § 115(g) could never apply when the shares involved were originally issued in good faith. It later abandoned this position, however, in Kirschenbaum v. Commissioner, 2 Cir., 1946, 155 F.2d 23, 170 A.L.R. 1389, on the ground that the Supreme Court in Commissioner of Internal Revenue v. Estate of Bedford, 1945, 325 U.S. 283, 65 S.Ct. 1157, 89 L. Ed. 1611 although considering another section of the code, in effect overruled its decision in the Patty case.

4. Treasury Regulation 111, § 29.115–9. *"Distribution in Redemption or Cancellation of Stock Taxable as a Dividend.—* * * *

"The question whether a distribution in connection with a cancellation or redemption of stock is essentially equivalent to the distribution of a taxable dividend depends upon the circumstances of each case. A cancellation or redemption by a corporation of a portion of its stock pro rata among all the shareholders will generally be considered as effecting a distribution essentially equivalent to a dividend distribution to the extent of the earnings and profits accumulated after February 28, 1913. On the other hand, a cancellation or redemption by a corporation of all of the stock of a particular shareholder, so that the shareholder ceases to be interested in the affairs of the corporation, does not effect a distribution of a taxable dividend. * * * "

doubtful whether the taxpayer could prevail.

■ But the courts generally have not applied the "net effect" test with strict logic but have broadened its scope to include inquiry into the possible existence of some "legitimate business purpose," for the redemption, that is to say, a legitimate corporate purpose as distinguished from a purpose to benefit the stockholder by a distribution of accumulated earnings and profits exempt from the imposition of income tax, see Smith v. United States, 3 Cir., 1941, 121 F.2d 692, thus adding a question of motive to the question of ultimate result. And the case at bar was submitted to the jury, not only without objection by the Collector but indeed in accordance with his requests to charge, on this broader basis. Considering the case on the basis upon which it was tried, as we think we must, we come to the conclusion that the court below correctly submitted the issue of essential equivalence to the jury, for we think there was evidence upon which the jury could reasonably conclude that there was a "legitimate business purpose" for the redemption of the taxpayer's shares.

■ In cases such as this, in which the stockholder-taxpayer and the principal if not as a practical matter the only corporate officer are one and the same person, it is difficult, to say the least, to distinguish between corporate purposes on the one hand and stockholder purposes on the other for transaction of the kind involved. But the background for the redemption and distribution sheds some light on its purpose. As already appears the block of 248 shares was originally given to the taxpayer in exchange for an interest-bearing promissory note which had previously been given to the taxpayer in settlement of his claim for salary, the purpose of the exchange of the stock for the note being a corporate one, i. e.

to improve, or at least to remove what was considered to be an adverse reflection upon, the corporation's credit position. And the taxpayer testified that when the certificate for the 248 shares was issued to him it was understood that the corporation would redeem them when it could do so conveniently. Thus it could be found that there was a corporate purpose in issuing the shares, and it could also be found that they were redeemed in carrying out that corporate purpose.

Furthermore, the fact that the taxpayer, although on the cash basis, paid income taxes for 1936 on approximately two-thirds of the sum here involved casts some doubt upon the existence of a purpose for the redemption to avoid the imposition of personal income taxes and indirectly strengthens the inference in favor of a corporate purpose for the transaction. The case is close, but we think on the "legitimate business purpose" test on which it was tried, coupled with the fact that the distribution was not actually *pro rata*, there was enough to take the case to the jury.

The Collector also objected to portions of the charge. It is true that there are perhaps some inconsistencies in it, but we do not think the jury could have been seriously confused. It will be enough to say that we think the charge basically accurate and about as clear as it could have been in view of the complexity and difficulty of the issue which had to be submitted.

The result we have reached renders it unnecessary for us to consider the contention of the taxpayer that the three year, rather than the five year period of limitation of § 275 I.R.C., 26 U.S.C.A. § 275, applies to the assessment and collection of the income taxes here involved.

The judgment of the District Court is affirmed; the appellee recovers costs on appeal.