**H. C. JONES, individually and as a former Collector of Internal Revenue, Appellant,**

v.

**John Toole GRIFFIN, Appellee.**

**No. 4681.**

United States Court of Appeals Tenth Circuit.

Nov. 15, 1954.

Walter Akerman, Jr., Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Sp. Assts. to the Atty. Gen., and Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., were with him on the brief), for appellant.

Graham Loving, Jr., and James D. Fellers, Oklahoma City, Okl. (Mosteller, Fellers, Andrews & Loving, Oklahoma City, Okl., were with them on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

The question of major importance presented on this appeal is whether the sum of $2,000 received from a corporation in redemption of certain shares of preferred stock was taxable to the recipient thereof on the basis of being essentially the equivalent of a taxable dividend by the corporation.

Koma, Inc., hereinafter referred to as the corporation, had issued an outstanding common stock and preferred stock. In 1946, the board of directors of the corporation adopted a resolution that all of the outstanding preferred stock should be redeemed. John Toole Griffin, hereinafter referred to as the taxpayer, owned 20 shares of such stock. In 1947, the taxpayer, along with other owners of preferred stock, surrendered his shares and received therefor the sum of $2,000. That was the amount which had been paid to the corporation for the shares at the time of their issuance. The Commissioner of Internal Revenue determined that the entire amount thus received by the taxpayer was subject to tax in his hands as a dividend received from the corporation. That determination resulted in the imposition of a deficiency in tax. The deficiency together with accrued interest was paid. A claim for refund was seasonably filed. No action was taken on the claim within six months after the date on which it was filed, and the taxpayer instituted this action to recover the amount paid. The case was tried to a jury. At the conclusion of the evidence, each party moved for a directed verdict in his favor. Rulings on the motions were reserved; the cause was submitted to the jury; and the jury returned a verdict in favor of the taxpayer. The former collector filed a motion for judgment in accordance with his motion for a directed verdict, or for a new trial. An order was entered denying both motions of the former collector; judgment was entered in favor of the taxpayer; and the former collector appealed.

Section 115(a) of the Internal Revenue Code, 26 U.S.C.A. § 115(a), defines the term dividend to mean any distribution made by a corporation to its shareholders, whether in money or in property, out of earnings or profits accumulated after February 28, 1913, or out of earnings or profits of the taxable year, without regard to the amount of the earnings and profits at the time the distribution was made. Section 115 (c) provides that amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts dis-

tributed in partial liquidation shall be treated as in part or full payment in exchange for the stock; and that in the case of amounts distributed in partial liquidation the part thereof which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. Section 115(g) provides that if a corporation cancels or redeems its stock at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed, to the extent that it represents a distribution of earnings or profits shall be treated as a taxable dividend. And section 115(i) provides that as used in the section, the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. No inflexible and unyielding rule of thumb has been devised for ready use in determining in every instance whether a transaction constituted a partial liquidation within the scope and meaning of section 115(c), or was the equivalent of a taxable dividend within the purview of section 115(g). A critical examination of the statute as a whole negates the suggestion that a weighted formula can resolve the crucial question in every case. But certain criteria are recognized for determining the question. These include the past record of the corporation in respect to the distribution of dividends, whether at the time of the distribution the corporation had large earnings and profits in excess of the distribution, whether any substantial change in the proportionate ownership and control of the corporation resulted from the distribution, whether the corporation manifested a policy of contraction in its operations, whether the corporation continued to operate at a profit, and whether the transaction was initiated or motivated by the stockholders. Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937;

Smith v. United States, 3 Cir., 121 F.2d 692; Hirsch v. Commissioner, 9 Cir., 124 F.2d 24; Rheinstrom v. Conner, 6 Cir., 125 F.2d 790, certiorari denied 317 U.S. 654, 63 S.Ct. 49, 87 L.Ed. 526; Commissioner of Internal Revenue v. Snite, 7 Cir., 177 F.2d 819; Boyle v. Commissioner, 3 Cir., 187 F.2d 557, certiorari denied 342 U.S. 817, 72 S.Ct. 31, 96 L.Ed. 618; Commissioner of Internal Revenue v. Roberts, 4 Cir., 203 F.2d 304. By appropriate instructions, the court charged the jury that these elements were component factors in the established judicial criteria for determining the question whether the distribution made to the taxpayer was a partial liquidation of the corporation or was the equivalent of a taxable dividend.

■ It is an established rule of general acceptation that usually the question whether a distribution made by a corporation in connection with the redemption or cancellation of its stock is essentially the equivalent of a taxable dividend or a partial liquidation within the intent and meaning of these statutory provisions is a question of fact dependent upon the particular circumstances of each case. Commissioner of Internal Revenue v. Babson, 7 Cir., 70 F.2d 304, certiorari denied Helvering v. Commissioner, 293 U.S. 571, 55 S.Ct. 107, 79 L.Ed. 669; Randolph v. Commissioner, 8 Cir., 76 F.2d 472, certiorari denied Randolph v. Helvering, 296 U.S. 599, 56 S.Ct. 116, 80 L.Ed. 425; Commissioner of Internal Revenue v. Champion, 6 Cir., 78 F.2d 513; Brown v. Commissioner, 3 Cir., 79 F.2d 73; Hirsch v. Commissioner, supra; Rheinstrom v. Conner, supra; Jones v. Dawson, 10 Cir., 148 F.2d 87; Commissioner of Internal Revenue v. Roberts, supra; Commissioner of Internal Revenue v. Sullivan, 5 Cir., 210 F.2d 607; Keefe v. Cote, 213 F.2d 651. The trial court submitted that issue to the jury, and the jury resolved it in favor of the taxpayer.

The former collector does not challenge the general rules of law to which reference has been made. He recognizes them. He contends that the stipulation into

which the parties entered and the evidence adduced upon the trial did not present any issue of fact for the jury. It is his position that under all of the facts and circumstances presented, the $2,000 which the corporation paid to the taxpayer in connection with the redemption and retirement of his shares of preferred stock was as a matter of law taxable in his hands as a dividend under section 115(g). By stipulation or evidence, these facts were adduced upon the trial. The corporation was engaged in the operation of a radio station in Oklahoma City, Oklahoma. In 1939, it began operations with an initial paid-in capital of $300,000 and a paid-in surplus of $30,000. It was authorized to issue and did issue 300 shares of common stock, each of the par value of $100, and 2,700 shares of preferred stock, each of the par value of $100. The articles of incorporation provided among other things that the preferred stock should bear interest at the rate of six per cent per annum and should be guaranteed and secured by a first lien upon all of the assets of the corporation; that the owners and holders of the stock, both common and preferred, should have voting privileges; that the holder of any preferred stock should be entitled to receive and the corporation should be bound to pay him dividends at such rates as would be sufficient to pay the interest on the stock held and owned by him; and that the directors should, from time to time, provide for the payment and retirement of such preferred stock as in their judgment would be to the best interest of the corporation. The common stock was originally subscribed by and issued to the following named individuals in the respective amounts stated, J. T. Griffin, 50 shares, Marjory Griffin, now Marjory Griffin Leake, 100 shares, the taxpayer, 144 shares, Bryan Cole, 3 shares, and Bryan Mathes, 3 shares. Cole and Mathes held their shares as nominees for J. T. Griffin. The original 2,700 shares of preferred stock were purchased by J. T. Griffin. Subsequently during the year 1939, he sold some of his shares to others;

and on January 1, 1940, the preferred stock was owned as follows: J. T. Griffin, 2,135 shares, Adele G. Rea, 150 shares, E. M. Doke, 100 shares, Tulsa Broadcasting Company, 100 shares, Carol G. Kuykendall, 50 shares, Mrs. C. S. Tinch, 50 shares, Marjory Griffin Leake, 45 shares, Rebecca Tinch, 25 shares, Carl S. Tinch, Jr., 25 shares, and the taxpayer, 20 shares. The prescribed dividends were paid on the preferred stock during the years 1939, 1940, and 1941. And dividends were paid on the common stock during the years 1941, 1942, and 1943, in the amounts of $3,000, $7,500, and $3,000, respectively. No dividends were paid during the years 1944, 1945, 1946, and 1947. During the years 1941 to 1945, the corporation redeemed and cancelled 470 shares of the preferred stock by paying the holders thereof the sum of $47,000 which was the amount originally paid for such stock. In the case of each redemption, the sum paid was charged to the preferred stock account of the corporation, and in no instance was it charged to the accumulated earnings and profits available for distribution as dividends. The redemptions and retirements thus made reduced the paid-in capital of the corporation from $300,000 to $253,000. In 1942, J. T. Griffin married Joyce Forbes Griffin. He became ill during that year and died in 1944. The taxpayer and Marjory Griffin Leake were his surviving son and daughter. The stock in the corporation which J. T. Griffin owned at the time of his death became a part of his estate. The will of J. T. Griffin provided that after payment of debts and certain bequests, 11/20ths and 9/20ths of the residue of his estate should be distributed to the taxpayer and Marjory Griffin Leake, respectively. And it stated or noted that provision had been made in a pre-marital agreement for his wife, Joyce Forbes Griffin. The taxpayer and Marjory Griffin Leake were named as executors under the will. Dissention arose between the widow and the children of J. T. Griffin and litigation ensued. An agreement was reached under which the widow was given the Griffin home place,

certain monetary allowances, and an undivided one-sixth interest in the estate of the decedent. At the time of the death of J. T. Griffin, the corporation was operating its radio station on 5,000 watts of power, day and nighttime. It was the view of the corporation that if the radio station were to maintain its competitive position a program of substantial enlargement, expansion, and new facilities would be necessary; and such program was contemplated. An increase in power to 50,000 watts, day and nighttime, was sought and obtained. A license or permit to establish and operate a frequency modulation station was sought and obtained, and the station was installed. An application was submitted for the establishment and operation of a television station, but a freeze was placed upon all applications for the establishment and operation of television stations and therefore the application of the corporation was not granted. The corporation expended approximately $275,000 in connection with the enlargement of its power and the installation of its frequency modulation station. And it was estimated that the completion of its contemplated program of expansion and improvement would require an additional outlay of approximately $600,000. In order to carry such program into effect, it would be necessary for the corporation to borrow a large amount of money. A bank was contacted and the corporation was advised that any loan would be second and subordinate to the lien of the owners of preferred stock, and that the bank was unwilling to make any loan so long as that stock was outstanding. Faced with that situation, the board of directors of the corporation, consisting of the taxpayer, Marjory Griffin Leake, James C. Leake, Bryan Cole, and Bryan Mathes, adopted a resolution calling in all of the outstanding preferred stock for redemption and retirement. The stock was surrendered and retired by crediting to each preferred stockholder the amount originally paid to the corporation for such stock. That reduced the capital of the corporation from $253,000 to $30,000.

The reduction was charged to the preferred stock account. The accumulated earnings and profits available for the distribution of dividends were not reduced. The corporation then borrowed from the bank $130,000, for which it executed a note due six months from date, with interest at the rate of 2½ per cent per annum. The corporation paid to each of the former owners of preferred shares the amount credited to his account by reason of the redemption of the stock. After the redemption and retirement of the preferred stock, the corporation did not diminish or discontinue its operations, and it continued to operate at a profit. The note given to the bank was paid before the close of the calendar year of its execution, and after that time the only money which the corporation borrowed was $25,000. At the time of the redemption and retirement of the preferred stock, the corporation had accumulated earnings and profits which exceeded in amount the outstanding preferred stock. But the earnings and profits were not in cash. They were invested in property used in the operation of the business of the corporation. And the amounts paid to the several owners of preferred stock, including the taxpayer, were not charged to the accumulated earnings and profits. They were charged to the preferred stock account. It thus is made clear that the corporation was liable for dividends on the preferred stock computed at not less than six per cent per annum and such dividends constituted a first lien on all of its property. No liability for dividends during the six years preceding the retirement of the preferred stock was recognized on the books of the corporation, and none was recognized on the books when the stock was redeemed. But the liability existed and was being increased from year to year. A bank was willing to lend the corporation money with interest at the rate of 2½ per cent per annum as soon as the preferred stock was redeemed and retired, but not before. By changing from outstanding preferred stock with a guaranteed dividend of not less than six

per cent per annum to borrowed money at interest of approximately 2½ per cent per annum, the corporation could effectuate a substantial saving and could enjoy a wider area of flexibility in its fiscal operations. Too, it was feared that some of the preferred stock would be sold; that it might find its way into the hands of the widow of J. T. Griffin; that friction might arise in the operation of the business of the corporation; that such friction might be inimical to the best interests of the corporation; and that such hazard could be avoided by the redemption and retirement of the stock. The redemption and retirement of the preferred stock bore a marked relation to the business of the corporation. The evidence and the inferences fairly to be drawn from it presented basis for the view that prudent business reasons on the part of the corporation prompted the redemption and retirement of the stock; that it was dictated by the justifiable needs of the corporation; that the furtherance of the best interests of the corporation underlay the action; and that tax avoidance was not its genesis. And the distribution was substantially different and dissimilar from what it would have been had the amount thereof been distributed as a dividend on the common stock. Resulting from the distribution, one stockholder was eliminated entirely; another, who previously had the controlling voting interest, was reduced to a relatively minor position; and the taxpayer, who theretofore had only a small proportional interest, became the major stockholder.

■ The evidence as a whole, together with all inferences fairly and reasonably to be drawn therefrom, presented an issue of fact as to whether the money paid in connection with the redemption or retirement of the preferred stock was essentially the equivalent of a taxable dividend or represented a partial liquidation of the corporation. Commissioner of Internal Revenue v. Sullivan, supra; Keefe v. Cote, supra.

■ The collector complains that the court erred in giving to the jury a certain instruction. But no exceptions were taken to the instructions given, and it is a general principle of the highest importance in the field of procedural law that ordinarily questions concerning the correctness of the instructions are not open to review on appeal unless the matter was brought to the attention of the trial court by exceptions to the instructions or in some other appropriate manner. American Smelting & Refining Co. v. Sutyak, 10 Cir., 175 F.2d 123; Nichols v. Barton, 10 Cir., 201 F.2d 110; Atchison, Topeka & Santa Fe Railway Co. v. Andrews, 1 Cir., 211 F.2d 264; Comins v. Scrivener, 1 Cir., 214 F.2d 810.

■ Finally, error is predicated upon the refusal of the court to give a requested instruction. The instructions given fairly and adequately covered the issues in the case. And where the material issues in a case have been comprehensively and correctly covered in the general instructions, the court is not required to give a requested instruction in terms to suit the desire of the party tendering it, even though it be a correct statement of law. Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 137 A.L.R. 598, certiorari denied 314 U.S. 638, 62 S.Ct. 73, 86 L.Ed. 512; Missouri, Kansas & Texas Railway Co. v. Jackson, 10 Cir., 174 F.2d 297; Thiringer v. Barlow, 10 Cir., 205 F.2d 476; Loew's, Inc. v. Cinema Amusements, Inc., 10 Cir., 210 F.2d 86, certiorari denied 347 U.S. 976, 74 S.Ct. 787.

The judgment is affirmed.