Estate of Arthur F. Hinrichsen, Deceased, Eleanor M. Hinrichsen, Executrix, and Eleanor M. Hinrichsen, Surviving Wife v. Commissioner.
Estate of Hinrichsen v. Commissioner
Docket No. 529-65.
United States Tax Court
T.C. Memo 1966-271; 1966 Tax Ct. Memo LEXIS 13; 25 T.C.M. (CCH) 1383; T.C.M. (RIA) 66271; December 19, 1966
*13 The distribution in redemption of preferred stock held by petitioners in a corporation, held, not essentially equivalent to a dividend within the meaning of section 302(b)(1) of the Internal Revenue Code of 1954. Ben D. White and Leonard M. Segal, 10 Washington St., Morristown, N.J., for the petitioners. Lee A. Kamp and Mitchell J. Rabil, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in the income tax of Arthur F. Hinrichsen, deceased, and his surviving wife, Eleanor M. Hinrichsen, for the taxable year 1959 in the amount of $11,302.68. Certain of the adjustments in the statutory notice of deficiency are not contested by the petitioners. The only remaining issue is whether $26,574 received by Arthur in the year 1959 in redemption of 258 shares of preferred stock which he held in A. F. Hinrichsen, Inc., was essentially equivalent to a dividend and taxable as ordinary income. Findings of Fact Some of the facts have been stipulated. The stipulation of facts, and the exhibits attached thereto, are incorporated herein by this reference. Arthur F. Hinrichsen (hereinafter referred to as Arthur) died on September 4, 1961, *14 a resident of Morristown, New Jersey. His surviving wife, Eleanor M. Hinrichsen (hereinafter referred to as Eleanor), was named executrix of his estate, one of the petitioners herein. Eleanor is a resident of Morristown, New Jersey, and, in her individual capacity, is the other petitioner herein. For the year 1959, Arthur and Eleanor filed a joint Federal income tax return with the district director of internal revenue at Newark, New Jersey. A. F. Hinrichsen, Inc., (hereinafter sometimes referred to as the corporation), is a corporation incorporated under the laws of New York on November 28, 1928, with an authorized capital of 100 shares of no-par value common stock and 100 shares of 7 percent cumulative preferred stock with par value of $100. The common stock was originally issued as of January 29, 1929, to Arthur and J. F. Kjerner, 80 shares and 20 shares, respectively, for a paid-in amount of $1,000. In November 1933, Kjerner relinquished his 20 shares of common stock at which time Arthur acquired 10 shares, increasing his holding to 90 shares, and Edna B. Hughes (hereinafter referred to as Edna), secretary to the corporation, personal secretary to Arthur and bookkeeper, acquired *15 10 shares. The ownership of the common stock remained unchanged from 1933 through the year in issue. The 100 shares of preferred stock initially authorized were issued at par for cash at various times from November 1928 to October 1933, at which time Arthur held 40 1/2 shares, Edna and Kjerner held 4 and 6 shares respectively, and 49 1/2 shares were held by outside investors. Between October 1933 and December 30, 1942, Edna purchased 11 shares from other preferred stockholders and Arthur sold 10 shares of preferred stock. At a special meeting of the stockholders held on December 2, 1942, it was decided that the 7 percent cumulative preferred stock would be exchanged for 6 percent noncumulative preferred stock and the preferred stockholders were voted a dividend equivalent to 10 percent of the accumulated unpaid dividends. Said preferred stockholders were not entitled to voting rights. At a special meeting of the board of directors of the corporation held on December 9, 1946, the preferred stock authorized was increased from 100 shares to 500 shares, in order to obtain additional capital necessary for larger inventories required by an increase in sales. These additional shares were *16 issued for cash. By December 1947, Arthur had acquired an additional 210 preferred shares, 5 of which were issued in the name of his wife, Eleanor, and Edna had acquired an additional 47 shares. Between 1948 and 1952, Arthur purchased 17 1/2 preferred shares at par from outside stockholders. After 1952 Arthur and Edna held 258 and 77 shares of the corporation's preferred stock, respectively, which they continued to hold until redeemed in 1959. The corporation was engaged in the business of sales engineering of heating and cooling systems. Its engineers would submit bids as either a jobber or manufacturer's representative for equipment such as heat conductors, registers, air ducts, fans, air filters and gilsonite for underground insulation. If successful on a bid, the corporation would either supply material and equipment from its inventory as a jobber, or order supplies and equipment as a manufacturer's representative for shipment directly to the contractors. If the manufacturer sent the shipment directly to the contractor, the manufacturer would bill the contractor directly and the company would receive a commission from the manufacturer for the sale. Otherwise, the corporation would *17 bill the contractor itself, and receive payment for supplies and equipment delivered. During the period 1946 to 1959, inclusive, the corporation's net profit, after taxes and before payment of dividends, was as follows: Year
Profit
1946
$ 1,865.87
1947
2,493.78 *
1948
6,548.47
1949
4,396.78
1950
2,723.69
1951
15,921.15
1952
15,328.87
1953
8,661.08
1954
8,612.49
1955
4,062.25
1956
10,949.05
1957
10,952.99
1958
1,159.58
1959
271.09
During the period 1946 to 1959, inclusive, the corporation paid the following dividends on its outstanding common and preferred stock: Common
Preferred
Year
Stock
Stock
Total
1946
$1,000
$ 480.00
$1,480.00
1947
1,000
2,460.00
3,460.00
1948
1,000
3,000.00
4,000.00
1949
1,000
3,000.00
4,000.00
1950
1,000
3,000.00
4,000.00
1951
1,000
3,000.00
4,000.00
1952
1,000
2,694.00
3,694.00
1953
1,000
2,442.00
3,442.00
1954
1,000
2,442.00
3,442.00
1955
1,000
2,070.00
3,070.00
1956
1,000
2,070.00
3,070.00
1957
1,000
2,070.00
3,070.00
1958
1,000
2,010.00
3,010.00
1959
1,105.50
1,105.50
The average percent of dividends paid during these years in relation to net profits before taxes was approximately 47 percent. During the years 1955 to 1961, inclusive, the corporation obtained short-term loans from banks with which *18 to discount its bills payable, made necessary because of heavy accounts receivable, and thereby maintain a good credit rating. These loans were in amounts of $25,000 each except for one in the amount of $15,000 in 1961. Each loan was repaid within a few months after it was made. In 1955 and 1956, the corporation also borrowed an aggregate of $26,606.25, in four loans, from Arthur, all of which was repaid by the end of 1956. In July and December of 1959, Arthur made loans of $25,000 each to the corporation, $25,000 of which was repaid in 1960 and $4,025 was repaid in 1961, leaving a balance of $20,750 owed by the corporation to Arthur as of December 31, 1961. Part of the amount borrowed from Arthur in 1959 was used to repay the $25,000 which had been borrowed from the bank in that year. The corporation borrowed $5,000 from Edna in August 1959, which it repaid in 1962. In December 1954 and January 1955, the corporation relinquished two of its larger accounts, known as the Vulcan Radiator, and Tuttle & Bailey accounts. In connection with these accounts, particularly the Tuttle & Bailey account, the corporation had been required to carry heavy inventories for quick deliveries to customers *19 and to assume substantial credit risks. As a result of the relinquishment of these two accounts, the corporation was able to reduce its inventories and release rented space used for inventory storage. It also reduced the number of its employees from 35 in 1954 to 16 in 1955, and reduced its overall overhead expenses. Thereafter there was a tendency of the corporation to go more to a commission type of business. Inventory on hand at the end of each of the years 1950 to 1962, inclusive, was as follows: Year
Total
1950
$ 41,477.13
1951
51,518.20
1952
101,588.99
1953
57,016.98
1954
43,233.34
1955
7,220.45
1956
10,211.00
1957
12,540.51
1958
6,720.94
1959
9,124.07
1960
5,566.01
1961
3,296.03
1962
4,385.80
In a special meeting held on December 28, 1951, the board of directors of the corporation, consisting of Arthur, Edna and T. M. Tonnele, the corporation's general counsel, adopted a resolution authorizing the officers of the corporation "to purchase such outstanding shares of preferred stock of the corporation as shall be offered for redemption by the stockholders in such amounts and at such times as the corporation shall hereafter designate or approve," and further authorized the present redemption of 51 shares at *20 $103 per share, the redemption price set at the time the stock was issued, together with accrued dividends to the date of redemption. This action was taken upon Arthur's suggestion that the financial position of the corporation warranted a reduction in its outstanding 6 percent preferred stock, on which the corporation was paying a higher annual return than the interest rate which could be obtained by financing in other ways. The 51 shares were redeemed in 1952. Pursuant to resolutions adopted by the board of directors on December 30, 1952 and March 11, 1954, and in accordance with its resolution of December 28, 1951, the corporation further redeemed its preferred stock in 1953 and 1954, at $103 per share, in the respective amounts of 42 shares and 7 shares. In 1955, upon Arthur's suggestion that the corporation had more capital than was immediately needed, due in part to a favorable settlement with Tuttle & Bailey and in part to successful operations for the year, the corporation redeemed an additional 55 shares of preferred stock at $103 per share, being all of its outstanding preferred stock except that held by Arthur, his wife, Eleanor, Edna and Tonnele, none of whose preferred *21 stock was redeemed during the years 1952 through 1955. Tonnele died on August 4, 1957, and Nathaniel F. Bedford (hereinafter referred to as Bedford) was appointed to his seat on the corporation's board of directors and thereafter served as the corporation's general counsel. Ten shares of preferred stock held by Tonnele at the time of his death were tendered to the corporation on December 20, 1957, but due to clerical error, payment for the shares was not made until July 1959. At a board of directors' meeting held on April 20, 1959, Arthur proposed that the corporation should continue its policy of redeeming its preferred stock, noting that certain securities held by the corporation were earning less than the amount being paid out by the corporation in dividends on its preferred stock. Edna opposed the redemption of the preferred stock in full at that time. After a full discussion in which Bedford weighed the pros and cons of the proposal, the following resolution was unanimously adopted: RESOLVED, that Arthur F. Hinrichsen, President, or Edna B. Hughes, Secretary of this Corporation, or either of them are hereby authorized to sell, assign and transfer any stock now owned by the corporation *22 in the E. I. duPont de Nemours Company, and that the said Edna B. Hughes, Secretary, or Nathaniel F. Bedford, Assistant Secretary of this Corporation is hereby authorized to certify this resolution to whom it may concern, FURTHER RESOLVED, that the aforesaid officers and the Treasurer of this Corporation are authorized to apply the proceeds thereof, first to the redemption of the preferred stock of this Corporation in the hands of Eleanor M. Hinrichsen, in the amount of $500., and thereafter to the redemption of the preferred stock in the hands of E. B. Hughes and A. F. Hinrichsen in proportion to their holdings of preferred stock. The stock owned by the corporation in the E. I. duPont de Nemours Company on April 20, 1959, was sold in June 1959. The proceeds of the sale totalled $6,054.51. In 1959, the corporation redeemed and cancelled the preferred stock held by Arthur, Eleanor and Edna, constituting all of its outstanding preferred stock, as follows: Date
No. of
Date
Stockholder
Tendered
Shares
Paid
Amount
Arthur F. Hinrichsen
5/ 1/59
3
5/ 1/59
$ 309
Eleanor M. Hinrichsen
6/10/59
5
6/10/59
515
Edna B. Hughes
6/10/59
27
6/10/59
2,781
Arthur F. Hinrichsen
6/10/59
25
6/10/59
2,575
Arthur F. Hinrichsen
60
6/17/59
6,180
Arthur F. Hinrichsen
40
6/22/59
4,120
Arthur F. Hinrichsen
115
6/29/59
11,845
Arthur F. Hinrichsen
20
7/31/59
2,060 *
Edna B. Hughes
6/10/59
50
7/31/59
5,150
*23 The parties have stipulated that the distribution to Eleanor on July 10, 1959, for 5 shares of preferred stock is to be treated as a stock redemption payable to Arthur by reason of the attribution rules of section 318 of the Internal Revenue Code of 1954. In the statutory notice of deficiency dated November 24, 1964, respondent determined that the $26,574 paid to Arthur in 1959 in redemption of his 258 shares of preferred stock in the corporation is essentially equivalent to a dividend and taxable as ordinary income. The distribution to Arthur in 1959 in redemption of his preferred stock in the corporation is not essentially equivalent to a dividend. Opinion The sole issue is whether the distribution in the amount of $26,574 made by A. F. Hinrichsen, Inc. to Arthur in 1959 in redemption of 258 shares of that corporation's preferred stock is taxable as ordinary income or capital gain. The outcome of *24 this issue depends upon whether the redemption was essentially equivalent to a dividend within the meaning of section 302(b)(1) of the Internal Revenue Code of 1954. [1] We do not think it was. Section 302(a) provides that a corporation's redemption of its stock shall be treated as a distribution in exchange for the stock under certain conditions specified in subsection (b). Section 302(b)(1) makes this rule applicable if the redemption is not essentially equivalent to a dividend. Petitioners do not contend, and the facts do not suggest, that the redemption in the instant case meets any other *25 of the conditions set forth in subsection (b). Our task is to determine, on the facts presented in this particular case, whether the redemption of the corporation's preferred stock in 1959 had the same effect as if a dividend on the corporation's common stock had been declared. Cobb v. Callan Court Company, 274 F. 2d 532 (C.A. 5); Ferro v. Commissioner, 242 F. 2d 838 (C.A. 3), affirming a Memorandum Opinion of this Court; Northup v. United States, 240 F. 2d 304 (C.A. 2); Colvin v. United States, 175 F. Supp. 877 (S.D.Calif.); Income Tax Regs., section 1.302-2(a) & (b). Certain evidentiary criteria or guideposts have been considered by the courts in determining whether a distribution in redemption of stock was essentially equivalent to a dividend under section 115(g) of the 1939 Code. Flanagan v. Helvering, 116 F. 2d 937 (C.A.D.C.), affirming a Memorandum Opinion of this Court; Genevra Heman, 32 T.C. 479, affd. 283 F. 2d 227 (C.A. 8). Substantially the same evidentiary criteria are to be considered in determining whether a distribution which fails to qualify as a sale or exchange of stock under section 302(b)(2), (3) or (4) was essentially equivalent to a dividend under section 302(b)(1) *26 of the 1954 Code. S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), p. 233; Thomas Kerr, 38 T.C. 723, affd. 326 F. 2d 225 (C.A. 9), certiorari denied 377 U.S. 963; McGinty v. Commissioner, 325 F. 2d 820 (C.A. 2), affirming 38 T.C. 882. See also Sorem v. Commissioner, 334 F. 2d 275 (C.A. 10), reversing 40 T.C. 206 on other grounds. The fact that the distribution fails to meet the requirements of paragraphs (2), (3) or (4) of section 302(b) is not to be taken into account in determining whether the redemption meets the requirements of paragraph (1). Section 302(b)(5). In the instant case, Arthur owned 258 shares, or 77 percent of the corporation's outstanding preferred stock, including the 5 shares owned by his wife which are attributable to him under section 318. Edna owned 77 shares, or 23 percent. Had a dividend been declared on the corporation's 100 shares of outstanding common stock, Arthur would have received 90 percent of the distribution as a dividend on his 90 shares and Edna would have received 10 percent as a dividend on her 10 shares. As a result of the redemption, Arthur got 13 percent less and Edna received 13 percent more of the distribution than if a dividend had *27 been declared on the corporation's common stock. Thus, the redemption did not have one of the most essential characteristics of a dividend, that of pro rata distribution of earnings and profits among holders of the common stock. See Cobb v. Callan Court Company, supra; McGinty v. Commissioner, supra. In addition, the redemption in the instant case served a corporate business purpose, which may act as a "countervailing consideration" even if the redemption resembles a dividend by being pro rata among the common shareholders. Bradbury v. Commissioner, 298 F. 2d 111 (C.A. 1), affirming a Memorandum Opinion of this Court. The minutes of the directors' meeting on April 20, 1959, indicate that the action to redeem the preferred stock was taken because the prevailing interest rate on borrowings was lower than the 6 percent dividend on the preferred stock. This action was in line with the corporation's recurring policy to cut expenses in times of declining profits, as illustrated by the relinquishment of the Tuttle & Bailey, and Vulcan Radiator accounts in 1955. We are not impressed with respondent's argument that the preferred stock was noncumulative and therefore there was no fixed *28 obligation on the corporation to pay the preferred stock dividends, particularly in view of the corporation's record of earnings and the payment of common stock dividends over the preceding thirteen years. Moreover, the corporation had consistently paid the preferred stock dividends. We are also not impressed by the argument that this "highly desirable and flexible form of financing" was offset by a loan from Arthur and was therefore of no benefit to the corporation but redounded to Arthur's benefit. Not only was the interest rate less than the preferred stock dividend rate, but, except as to the one loan made in December 1959, the corporation had been accustomed to pay off all of the loans, from the banks as well as from Arthur, within a few months after they were made, and thus avoided payment of a full year's interest. While the mere existence of a bona fide business purpose may not of itself conclusively determine that the distribution was not essentially equivalent to a dividend, it is a factor to be considered and when considered in the light of all the facts and circumstances it adds weight to the taxpayer's contentions. Cf. John A. Decker, 32 T.C. 326, affd. per curiam 286 F. 2d 427 *29 (C.A. 6); Colvin v. United States, supra. Other factors lend support to our conclusion that the redemption of the preferred stock in 1959 was not essentially equivalent to a dividend. Contrary to respondent's contention, the corporation had a history of paying substantial dividends over the thirteen years preceding the redemption in 1959. These amounted to $10 per year for each share of common stock and $6 per year for each share of preferred stock outstanding. They averaged 47 percent of net profits before taxes. Although the redemption of the preferred stock was recommended to the board of directors by Arthur, the chairman of the board, there is no indication he did so for personal reasons. On the contrary, it was suggested as a means of reducing corporate expenses and was fully discussed by the directors, including the corporation's legal counsel. There is no suggestion the redemption was made for tax avoidance purposes. Finally, of the $103 per share paid in redemption, $100 represented paid-in capital, not capitalized earnings, and three dollars was the redemption premium called for by the preferred stock. See Colvin v. United States, supra. Considering all the pertinent factors, *30 we have found as a fact and now hold that the redemption of Arthur's 258 shares of the corporation's preferred stock in 1959 was not essentially equivalent to a dividend within the meaning of section 302(b)(1). Decision will be entered under Rule 50. Footnotes
*. Estimated for six months ending June 30, 1947.↩
*. Arthur refunded $1,030 of the $2,060 payment made to him on July 31, 1959, as erroneously paid to him for 10 shares of preferred stock owned by T. M. Tonnele at the time of his death and tendered for redemption in December 1957. The corporation in turn made proper payment for such shares.↩
1. Except as otherwise indicated, all section references hereinafter will refer to the Internal Revenue Code of 1954. SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK. (a) General Rule. - If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges. - (1) Redemptions Not Equivalent to Dividends. - Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.↩