J. Milton SOREM and Wanda M. Sorem, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

R. W. BOOGAART and Margaret Boogaart, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 7495, 7496.

United States Court of Appeals Tenth Circuit.

July 9, 1964.

---

4. The actual deductions claimed were, of course, substantially less than this figure.

**276**

Thomas J. Kennedy, Salina, Kan. (Robert B. Berkley, Salina, Kan., on the brief), for petitioners.

Ralph A. Muoio, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., on the brief) for respondent.

Before PHILLIPS and SETH, Circuit Judges, and ARRAJ, District Judge.

ORIE L. PHILLIPS, Circuit Judge.

J. Milton Sorem and his wife, and R. W. Boogaart and his wife filed petitions with the Tax Court for redeterminations of deficiencies claimed by the Commissioner in their income taxes for the taxable year ending December 31, 1958. The two cases were consolidated for trial, at the conclusion of which the Tax Court decided that there was a deficiency in income tax due from the Sorems for 1958 of $17,790.06, and a deficiency in income tax due from the Boogaarts for 1958 of $1,592.04. The cases are here on petitions to review.

The stipulations of the parties and the evidence presented to the Tax Court disclose the following facts:

Sorem and Boogaart are brothers-in-law. In 1935, they formed a partnership with M. Boogaart, the father of Boogaart and the father-in-law of Sorem, known as the Boogaart Supply Company, hereinafter referred to as the Partnership, to engage in the retail grocery business in northwestern Kansas. By 1949, such Partnership owned retail stores in Concordia, Clay Center, Marysville, and Washington, Kansas, and had interests in several other grocery outlets in the surrounding area.

In 1949, the partners decided to enter the wholesale grocery business and purchased the Concordia Mercantile Company, in Concordia, Kansas. They formed the Boogaart Supply Company, Inc., a Kansas corporation, hereinafter referred to as the Wholesale Corporation, to carry on such wholesale operation, and contributed $240,000 capital to the corporation in exchange for stock. The four grocery stores continued to be owned and operated by the Partnership.

From 1952 to 1957, the partners organized other companies which engaged in various aspects of the wholesale grocery business, all of which were transferred to the Wholesale Corporation in exchange for stock.

In 1956, M. Boogaart died. Pursuant to an agreement, Sorem and R. W. Boogaart purchased the deceased partner's interest in the Partnership, giving each of them a one-half interest therein. In order to obtain funds to purchase the deceased partner's interest, each of the survivors borrowed money. Boogaart paid off his loan when he received his share of his father's estate, but Sorem borrowed $30,000 from the Wholesale Corporation in April, 1958, in order to pay off his loan.

In 1957, Boogaart accepted an offer from the International Basic Economy Corporation, a Rockefeller Foundation organization, to organize and operate American style supermarkets in Italy. In order to facilitate management of its four grocery stores during his absence, the Partnership incorporated each of them and received 100 per cent of the stock in the four corporations. Such corporations will hereinafter be referred to as the Retail Corporations.

Prior to 1958, the Wholesale Corporation obtained all of its funds for capital expansion from earnings, first mortgages, and sale of debentures. In 1954 and 1955, it sold two issues of debentures totaling $450,000, but in spite of such issues it was always short of money and had a lack of working capital for its expansion program.

The Wholesale Corporation consulted financial advisers, who advised that the Retail Corporations should be consolidated under the Wholesale Corporation, in order to improve the condition of its financial statement and to eliminate any possible conflict of interest, and then to obtain additional capital to finance its expansion program from the public sale of stock in the Wholesale Corporation.

A plan was suggested whereby the Partnership's stock in the Retail Corporations would be exchanged for stock in the Wholesale Corporation, but such plan was rejected by Sorem, because he did not want to relinquish his interest in the Retail Corporations, which had good earning capacity, for stock in the Wholesale Corporation, which, because of the expansion program, would not be in a position to pay dividends for several years, thus making it difficult for him to repay his $30,000 debt to the Wholesale Corporation.

Thereafter, on September 26, 1958, the Partnership transferred the stock in the Retail Corporations in equal shares to Boogaart and Sorem, and on September 27, 1958, the Wholesale Corporation purchased such stock from Boogaart and Sorem, paying each of them $44,174.81.

Sorem's payment was in the form of the cancellation of a debt he owed the Wholesale Corporation in the amount of $6,070.10 and a promissory note of the Wholesale Corporation in the amount of $38,104.71. The promissory note was paid in full in four installments during 1959, and Sorem used the proceeds therefrom to pay his income tax on the transaction and to pay off his $30,000 debt to the Wholesale Corporation.

Boogaart's payment was in the form of the cancellation of a debt he owed the Wholesale Corporation in the amount of $5,898.95, an immediate cash payment of $3,275.86, $15,000 plus accrued interest on January 15, 1959, $10,000 plus accrued interest on January 15, 1960, and $10,000 plus accrued interest on January 15, 1961, in accordance with a written agreement between Boogaart and the Wholesale Corporation.

Before the Wholesale Corporation purchased the Retail Corporations, it had no open credit with banks and could only obtain credit by securing its obligations with first mortgages and individual liability of Boogaart and Sorem, but after such purchase it obtained an open line of credit with a Chicago bank in the amount of $500,000, with which it was able to pay the construction costs of new supermarkets prior to obtaining long term financing.

Neither the Wholesale Corporation nor the Retail Corporations had ever paid dividends to its shareholders, and on September 27, 1958, the Retail Corporations had accumulated earnings and profits totaling $66,749.62.

Immediately prior to the sale, the outstanding common stock of the Wholesale Corporation was owned as follows:

| | |
|---|---|
| The Partnership | 75.58% |
| Boogaart | 6.94% |
| Boogaart's Children | 7.04% |
| Sorem's Children | 7.04% |
| Key Employees | 3.4 % |

Immediately subsequent to the sale, the outstanding common stock of the Wholesale Corporation was owned as follows:

| | |
|---|---|
| Boogaart | 44.73% |
| Sorem | 37.79% |
| Boogaart's Children | 7.04% |
| Sorem's Children | 7.04% |
| Key Employees | 3.4 % |

As the result of a stock option plan for key employees of the Wholesale Corporation, established in 1956, options to purchase 1,012 shares of common stock were

in effect at the time of the sale. Such options were later exercised and as of January 26, 1961, the outstanding common stock of the Wholesale Corporation was owned as follows:

| | |
|---|---|
| Boogaart | 37.81% |
| Sorem | 31.95% |
| Boogaart's Children | 5.96% |
| Sorem's Children | 5.96% |
| Key Employees | 18.32% |

On their joint income tax returns for the 1958 taxable year, Sorem and his wife and Boogaart and his wife reported the proceeds from the transfer of stock of the Retail Corporations to the Wholesale Corporation, as consideration for the sale of stock, taxable as long term capital gains. The Commissioner in his deficiency assessments determined that such proceeds constituted a redemption of stock essentially equivalent to a dividend, under §§ 302 and 304 of the Internal Revenue Code of 1954, taxable as ordinary dividend income. The Tax Court found that the distributions were not made in furtherance of any corporate purpose and did not substantially lessen the control of Boogaart and Sorem over the combined corporate operations and held that the transaction was a redemption of stock essentially equivalent to a dividend.

The provisions of the Internal Revenue Code of 1954 here material are as follows:

"§ 304. *Redemption through use of related corporations*

"(a) *Treatment of certain stock purchases.*—

"(1) *Acquisitions by related corporation (other than subsidiary).*—For purposes of sections 302 and 303, if—

"(A) one or more persons are in control of each of two corporations, and

"(B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control,

then  *  *  *  such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock.
*  *  *

*  *  *  *  *  *

"(c) *Control.*—

"(1) *In general.*—For purposes of this section, control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote, or at least 50 percent of the total value of shares of all classes of stock.
*  *  *  *"

"§ 302. *Distributions in redemp-of stock*

"(a) *General rule.*—If a corporation redeems its stock  *  *  *  and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

"(b) *Redemptions treated as exchanges.*—

"(1) *Redemptions not equivalent to dividends.*—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

*  *  *  *  *  *

"(c) *Constructive ownership of stock.*—

"(1) *In general.*—Except as provided in paragraph (2) of this subsection, section 318(a) shall apply in determining the ownership of stock for purposes of this section."

"§ 318. *Constructive ownership of stock*

"(a) *General rule*  *  *  *

"(1) *Members of family.*—

"(A) *In general.*—An individual shall be considered as owning the stock owned, directly or indirectly, by or for—

*  *  *  *  *  *

"(ii) his children, grandchildren and parents.

\* \* \* \* \* \*

"(3) *Options.*—If any person has an option to acquire stock, such stock shall be considered as owned by such person. \* \* \* "

The parties agree that the transaction here involved is "a distribution in redemption of stock" under § 304(a) (1), supra, and the sole question here presented is whether the distributions of $44,174.81, by the Wholesale Corporation to each of the taxpayers are essentially equivalent to dividends under § 302(b) (1), supra. If such distributions are essentially equivalent to dividends, they should be taxed as ordinary dividend income, but if they are not essentially equivalent to dividends, they should be taxed as distributions in exchange for stock at capital gains rates.

The Senate Committee Report on the Internal Revenue Code of 1954,[1] insofar as it relates to § 302(b), supra, provides as follows:

"Subsection (b) of section 302 states three conditions in paragraphs (1), (2), (3), and (4), the satisfaction of any one of which will result in the treatment of the redemption as a distribution in full or part payment in exchange for stock. In general, under this subsection *your committee intends to incorporate into the bill existing law as to whether or not a reduction is essentially equivalent to a dividend under section 115 (g) (1) of the 1939 Code,* and in addition to provide three definite standards in order to provide certainty in specific instances.

\* \* \* \* \* \*

"*The test to be incorporated in the interpretation of paragraph 1 is in general that currently employed* *under section 115(g) (1) of the 1939 Code.*" (Emphasis supplied.)

The test for dividend equivalency established by the cases applying § 115(g) of the Internal Revenue Code of 1939 is whether, considering all the factors and circumstances of the case as a whole, the net effect of the transaction is that of a dividend.[2]

Mertens, Law of Federal Income Taxation, Zimet, Stanley & Kilcullen Revision, § 9.100, pp. 218–220, states:

"\* \* \* The net effect tests has been rephrased that if all the circumstances show that the redemption does not as a practical matter change the essential relationship between the stockholders and the corporation then the distribution is essentially a taxable dividend.

\* \* \* \* \* \*

"In some opinions lengthy lists of criteria to be considered in deciding the net effect of the redemption may be found. But despite the attention given to other factors, the two most significant factors have been the presence of a contraction of the business on the corporate level, or on the stockholder level the termination or significant reduction in the interest of the stockholder in the corporation. Although there are a few cases in which the distribution has been held not to have the net effect of a dividend when there was neither a contraction of the business nor a substantially disproportionate redemption, the distinct trend has been to hold that there was a taxable dividend when neither of these two factors is present. On the other hand, when either of these factors is present, the distribution has been found not to be taxable as a dividend."

1. 3 U.S.Code Congressional and Administrative News, 83rd Cong., 2nd Sess., 1954, pp. 4621, 4870.

2. Jones v. Griffin, 10 Cir., 216 F.2d 885, 890; Commissioner v. Roberts, 4 Cir., 203 F.2d 304, 306; United States v. Fewell, 5 Cir., 255 F.2d 496, 499; 26 C.F.R. § 1.302–2(a); Keefe v. Cote, 1 Cir., 213 F.2d 651, 656; Flanagan v. Helvering, 73 App.D.C. 46, 116 F.2d 937, 939; See also: Commissioner v. Estate of Bedford, 325 U.S. 283, 289, 292, 65 S.Ct. 1157, 89 L. Ed. 1611.

In the instant case, the transaction is not, in the true sense of the word, a redemption, but is treated as a redemption solely by reason of § 304(a) (1), supra. Under those circumstances one would not necessarily expect to find a contraction of the corporate business as a result of the sale. But we are of the opinion that there was a significant reduction in the respective interests of Boogaart and Sorem in the Retail Corporations, as a result of the sale of their stock to the Wholesale Corporation.

Applying the provisions of § 318(a) (3), supra, the employees who held stock options must be considered as owning the stock for which they held options, and applying the provisions of § 318(a) (1) (A), supra, Boogaart and Sorem must be considered as constructively owning the stock owned by their respective children. Thus, although prior to the sale Boogaart and Sorem each owned 50 per cent of the stock of the Retail Corporations, subsequent to the sale Boogaart constructively owned 43.77 per cent, and Sorem constructively owned 37.91 per cent of the stock of such corporations. Boogaart reduced his interest by 6.23 per cent and Sorem reduced his interest by 12.09 per cent. And if their interests are viewed collectively, prior to the redemption Boogaart and Sorem owned 100 per cent of the stock of the Retail Corporations, and subsequent to the sale they constructively owned only 81.68 per cent of such stock. Before the sale they had the right to participate directly in the distribution of earnings and on liquidation in the distribution of assets of the Retail Corporations, on the basis of 50 per cent to each. After the sale they could participate only indirectly in a distribution of earnings and on liquidation in the distribution of the assets of the Retail Corporations, on the basis of 37.81 per cent to Boogaart and 31.95 per cent to Sorem, or if they are regarded as owning respectively the stock of their children, by virtue of § 318(a) (1) (A), supra, on the basis of 43.77 per cent and 37.91 per cent, respectively. These were significant reductions of their interests.

Moreover, the changes in control the two taxpayers were able to exercise over the Retail Corporations are significant. Prior to the sale, although neither Boogaart nor Sorem had positive control over the Retail Corporations, each had negative control, that is, the power to prevent any action requiring the approval of a majority of the shareholders. Subsequent to the sale, neither of them had such negative control, and either, by inducing the other stockholders to join with him, could exercise corporate control.

Further, the purpose of the redemption is relevant in applying the net effect test.[3] It is clear and uncontroverted in the instant case that the acquisition of the Retail Corporations by the Wholesale Corporation was motivated by prudent business reasons, based upon advice from independent financial advisers, and as a result of such acquisition the Wholesale Corporation was able to obtain an open line of credit, when previously it could obtain credit only by securing its obligations with first mortgages and individual liability of Sorem and Boogaart.

The argument advanced by the Commissioner that the Wholesale Corporation could have acquired ownership of the four Retail Corporations by exchanging its own stock for the stock of the Retail Corporations, instead of distributing $88,349.62 to Boogaart and Sorem, is not supported by the facts before the court. In fact, a stock-for-stock plan was suggested, but was rejected by Sorem because of his $30,000 debt to the Wholesale Corporation. Thus, a stock-for-stock transaction was impossible, and the only manner in which the Wholesale Corporation could acquire the stock of the Retail Corporations was to purchase it from Sorem and Boogaart.

We conclude that, considering all the circumstances of the case, the distribu-

3. Jones v. Griffin, 10 Cir., 216 F.2d 885, 890; Keefe v. Cote, 1 Cir., 213 F.2d 651, 657; United States v. Fewell, 5 Cir., 255 F.2d 496, 500; Merten, Law of Federal Income Taxation, Zimet, Stanley & Kilcullen Revision, § 9.100, p. 218.

-tion of $88,349.62 to Boogaart and Sorem did not have "the same effect as a distribution without any redemption of stock," [4] and is therefore not essentially equivalent to a dividend.

The decisions of the Tax Court are reversed and the causes remanded, with instructions to set aside the deficiencies.