Gerald M. **FRIEND** et al., Plaintiffs, Appellants,

v.

**UNITED STATES** of America, Defendant, Appellee.

No. 6343.

United States Court of Appeals First Circuit.

May 17, 1965.

George E. Lodgen, Boston, Mass., with whom Nathan T. Wolk and Sherin & Lodgen, Boston, Mass., were on brief, for appellants.

Alec A. Pandaleon, Atty., Dept. of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, and David O. Walter, Attys., Dept. of Justice, and W. Arthur Garrity, Jr., U. S. Atty., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Senior Circuit Judge (by designation).

This is an appeal from a judgment of the United States District Court for the District of Massachusetts, entered March 4, 1964, for the defendant in a suit to recover $7,846.58 (together with interest) paid in federal income taxes for the year 1954.

The basic facts are not disputed. In 1954 Gerald M. Friend, the taxpayer, was controlling stockholder in Gerald M. Friend, Inc., a Massachusetts corporation doing business in the years 1954 and following as a jobber of ladies' blouses and accessories. In 1954, just prior to the events pertinent to this case, the taxpayer owned 178 shares of the 226 total outstanding shares of common stock in the corporation. One Agnes McGowan and one Theodore Lewis each owned 24 of the remaining 48 shares. The taxpayer owned all 70 of the outstanding shares of preferred stock. On July 1, 1954, the taxpayer, McGowan, Lewis, one Simon Manowitz and one George E. Lodgen entered into an agreement which purported to arrange for the taxpayer's retirement from the corporation and for purchase of the taxpayer's interest by McGowan, Lewis, Manowitz and the corporation itself. Pursuant to this agreement and at the time it was entered into, the taxpayer sold 12 shares of his common stock to Manowitz; the corporation purchased 45 shares of the common stock held by the taxpayer; and the remaining 121 shares were transferred to Lodgen as "trustee." The nature of the "trust" created by the agreement is not clear; in any event the agreement provided that the stock transferred to the "trustee" was to be recorded on the records of the corporation in the name of "George E. Lodgen, Trustee under agreement dated July 1, 1954." The agreement also provided that the "trustee" was to have all the rights incident to stock ownership including the power to vote. By the terms of the agreement, the 121 shares were to be sold to McGowan, Lewis, and Manowitz in proportion to the shares previously held by them, the shares to be

paid for by bonuses received by those three from the corporation.

In 1954 the trustee "sold" 25 shares and in 1957 he "sold" 11, all of the proceeds being turned over to the taxpayer each time in accordance with the agreement. Actually of these 36 shares only 6 were sold outright to the three buyers even though the price they paid was for a full 36 shares and was computed at a per share price. The other 30 shares not sold outright were held by Lodgen, allegedly as "trustee" for the three buyers. Finally, in 1959, the corporation was sold to a Mr. Katz and all the shares, including those held by Lodgen as "trustee" for the buyers, were transferred to Katz. The "trustee" turned the entire proceeds over to the taxpayer.

The question thus raised is whether the profit realized by the taxpayer when he transferred the 45 shares to the corporation in 1954 is taxable as a capital gain or as ordinary income. In 1955 the taxpayer and his wife, with whom he filed a joint return, listed the profit as a capital gain. In May of 1958 the Commissioner of Internal Revenue, considering the profit, as well as the amount paid in legal expenses by the corporation in preparing and effectuating the agreement, to be ordinary income, made a deficiency assessment of $6,522.74, which sum, together with interest in the amount of $1,323.84, the taxpayer paid the District Director of Internal Revenue in September of 1958. Thereafter taxpayer and his wife brought the present suit for refund of the tax and interest paid. The trial judge found that the sum the taxpayer received for those 45 shares was a dividend and that the amount paid in the preparation and effectuation of the agreement constituted taxable income to him. Having concluded that the trial court did not err in these findings, we affirm.

Sections 301 and 302 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 301, 302 are the applicable statutes. Section 301 establishes the general rule that those distributions of property made by a corporation to a shareholder which are dividends shall be included in gross income. Section 302, however, provides that if a corporation redeems its stock, the redemption shall be treated as a distribution in part or full payment in exchange for the stock provided one of four tests is satisfied. Those four tests are set out in paragraphs (1), (2), (3), and (4) of subsection (b) of section 302. We shall describe them in reverse order, for the sake of clarity.

Paragraph (4) makes special provision for railroad corporations and is therefore not applicable here. Paragraph (3) provides for capital gain treatment where the redemption is in complete redemption of all the stock of the corporation owned by the shareholder. Paragraph (2) provides for capital gain treatment where the redemption is substantially disproportionate with respect to the shareholder. In order for that paragraph to apply immediately after the redemption the shareholder must own less than 50 percent of the total combined voting power of all classes of stock entitled to vote. "Substantially disproportionate" is then given a mathematical definition: The ratio which the voting stock of the corporation owned by the shareholder immediately after the redemption bears to all the voting stock of the corporation at such time must be less than 80 percent of the ratio which the voting stock of the corporation owned by the shareholder immediately before the redemption bears to all the voting stock of the corporation at such time. Further, the shareholder's ownership of the common stock of the corporation (whether voting or nonvoting) after and before redemption must also meet the 80 percent requirement. Finally, paragraph (1) provides for capital gain treatment where the redemption is not "essentially equivalent to a dividend." That cryptic phrase refers us back to section 115 of the Internal Revenue Code of 1939 and the cases decided thereunder. 3 U.S.Code Cong. & Ad. News, pp. 4621, 4870 (1954). See United States v. Carey, 289 F.2d 531 (8th Cir. 1961); Ballenger v. United States, 301 F.2d 192 (4th Cir. 1962).

The taxpayer argues that the facts adduced at trial bring him within each and every paragraph under section 302 (b) except, of course, 302(b) (4). He says that the transfer of the 121 shares to the "trustee" was a meaningful transfer which absolutely and unconditionally terminated his interest in the corporation. Therefore, he says, the transfer of the 121 shares, coupled with the purchase of the 45 shares by the corporation, effected a complete redemption under paragraph (3); effected a substantially disproportionate redemption under paragraph (2); and, in any event, was not substantially equivalent to a dividend, therefore permitting capital gain treatment under paragraph (1).

First, as to paragraph (3) of the statute, we agree with the district court that the corporation did not make a complete redemption. That paragraph requires a redemption of all the stock of the corporation owned by the shareholder. Apart from the question of whether the 1954 transaction, including the transfer to the "trustee," was a redemption in its totality, which we pass over, it is admitted that the taxpayer thereafter retained his 70 shares of preferred stock, subject only to an option in the buyers to purchase those shares from the taxpayer, such option to become effective after sale of all the shares of common stock. This option to acquire an option did not cause the buyers to become constructive owners of the stock under section 318(a) (3), since, we think, Congress intended that section to apply only where options are held by the person whose shares are being redeemed. Paragraph (3) therefore does not apply.

The trial court found, in respect to paragraph (2), that the redemption was not substantially disproportionate because after the redemption the taxpayer owned more than 50% of the total voting power and also more than 80% of the voting power he had before the redemp-

tion. In making that finding, we assume that the trial court found that the 1954 agreement effected no change of ownership, as indeed it found with regard to paragraph (1). We cannot say the district court was clearly erroneous in so finding. At most the agreement was a trust under which the taxpayer was the beneficiary until such time as the buyers should purchase the stock from the trustee.[1] In that event, taxpayer would be constructive owner of the stock under the constructive ownership provisions of section 318(a) (2) (B). Alternatively, the trial court may have found the agreement was something less than a trust and without effect on ownership. In any event we are not constrained to hold otherwise as a matter of law. In so disposing of this issue, we need not reach the question whether, under paragraph (2), transfers separate from but simultaneous with the actual redemption may be included in making the computations contained in the paragraph. See 1 Mertens, Law of Federal Taxation § 9.105 at 242 (1962).

Finally, the district court found that paragraph (1) was without application because the 7% reduction in the taxpayer's control caused by the 1954 transaction was not a significant change. As we said in Bradbury v. C. I. R., 298 F.2d 111, 116 (1st Cir. 1962), the basic criterion in ascertaining dividend equivalence is whether the redemption caused a meaningful change in the position of the shareholder. We do not think the trial court wrong in concluding that a 7% reduction is not a significant one. Nor are we inclined to disagree with the district court on the basis, advanced by the taxpayer, that the redemption of the 45 shares was only one step in a total plan for the taxpayer's withdrawal from the corporation. It is true that where a stock redemption is in fact a step in a course of planned disposition of a stockholder's entire holding, a finding of divi-

---

1. Examination of the entire trust instrument discloses that the trustee does not become a trustee for the buyers until certain payments have been made. Ac-

cordingly, he must be trustee for the taxpayer until then; certainly the trustee was not a beneficial owner in his own right.

dend equivalence may be precluded. See In Re Lukens' Estate, 246 F.2d 403 (3d Cir. 1957). However, in light of the fact that the plan here apparently was intended to extend over an indefinite period of time and that in the meantime the taxpayer retained control of the corporation, and, to a considerable extent, constructive ownership of it, we do not think the trial court erred in disregarding the purported plan. We, therefore, think the trial court's finding of dividend equivalence, under paragraph (1), should be allowed to stand.

Since the amount of money paid in the preparation and effectuation of the 1954 agreement was paid solely to benefit the taxpayer, we agree with the district court that that amount constituted taxable income to him.

Judgment will be entered affirming the judgment of the district court.