NORTHWESTERN STEEL AND SUPPLY CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

HANSEN BUILDING SPECIALTIES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5003-71, 5004-71. Filed June 11, 1973.

*James D. Conway*, for the petitioners.
*Ronald M. Frykberg*, for the respondent.

STERRETT, *Judge:* The Commissioner determined deficiencies in petitioners' Federal income taxes as follows:

| Petitioner | Docket No. | Year | Amount |
| --- | --- | --- | --- |
| Northwestern Steel & Supply Co., Inc. | 5003-71 | 3/31/66 | $3,250.00 |
| | | 3/31/67 | 3,414.22 |
| | | 3/31/68 | 3,526.89 |
| Hansen Building Specialties, Inc. | 5004-71 | 2/28/67 | 3,944.71 |
| | | 2/29/68 | 3,474.82 |

Due to concessions, the sole issue remaining for adjudication is whether Northwestern Steel & Supply Co., Inc., and Hansen Building Specialties, Inc., were members of a parent-subsidiary controlled group within the meaning of section 1563(a)(1), I.R.C. 1954,[1] and thus limited by section 1561 to one surtax exemption.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner, Hansen Building Specialties, Inc. (hereinafter some-times referred to as Hansen Building, Inc.), is a corporation, organized on March 1, 1947, under the laws of Nebraska with its principal place of business at Hastings, Nebr. It filed its U.S. corporate income tax returns for the taxable years ended February 28, 1967, and February 29, 1968, with the district director of internal revenue at Omaha, Nebr.

Petitioner, Northwestern Steel & Supply Co., Inc. (hereinafter sometimes referred to as Northwestern), is a corporation, organized on April 8, 1960, under the laws of Nebraska with its principal place of business in Omaha, Nebr. Northwestern filed its U.S. corporate income tax returns for the 3 taxable years ended March 31, 1966, through March 31, 1968, with the district director of internal revenue at Omaha, Nebr.

Since its incorporation Hansen Building, Inc., has had one class of common stock outstanding. During 1960 James T. Hansen (hereinafter referred to as Hansen) owned 97 percent of the outstanding stock. The remaining shares were owned by Hansen's mother, Stella. For the years 1965 through 1968 the stock ownership of Hansen Building, Inc., may be reflected as follows:

| Date | Stockholder | Number of shares |
|---|---|---|
| 12/31/65 | James T. Hansen | 429 |
| | Stella Hansen | 51 |
| 12/31/66 | James T. Hansen | 429 |
| | Stella Hansen | 51 |
| 12/31/67 | James T. Hansen | 379 |
| | Lois Ann Hansen (Wife of James T. Hansen), as Custodian for James T. and Lois Hansen's five children | 50 |
| | (treasury stock, 51 shares) | |
| 12/31/68 | James T. Hansen | 329 |
| | Lois Ann Hansen, as Custodian for James T. and Lois Hansen's five children | 100 |
| | (treasury stock, 51 shares) | |

Hansen, from 1960 until his mother's death in 1967, was secretary-treasurer of Hansen Building, Inc. After Stella's death he became president of the company. Hansen Building, Inc., during the period in issue was engaged in the business of fabricating structural steel and distributing building products.

Northwestern upon incorporation issued 600 shares of stock at $100 per share to Hansen Building, Inc. Shortly thereafter it acquired 750 shares of Northwestern Steel Works, Inc. (hereinafter referred to as

Steel Works, Inc.), from G. C. Olsen for $60,000 in cash and a promissory note in excess of $179,000. Steel Works, Inc., had 12 additional shares outstanding. These shares were acquired by Fred M. Archerd (hereinafter referred to as Archerd) then an employee of Hansen Building, Inc.

On October 1, 1960, Northwestern acquired the assets and liabilities of Steel Works, Inc. Immediately thereafter Steel Works, Inc., was dissolved. The stock owned by Archerd was exchanged for 10 shares of Northwestern stock. (At this point Northwestern had 610 shares issued and outstanding: 600 owned by Hansen Building, Inc., and 10 owned by Archerd).

From its formation through the years in issue Northwestern has had one class of stock outstanding. Hansen has been and remains the corporate president. The corporation has continued to carry on the structural steel fabrication business initiated by Steel Works, Inc.

Prior to the incorporation of Northwestern, Archerd had been employed by Hansen Building, Inc., in Hastings, Nebr., as sales manager. Upon Northwestern's incorporation, Archerd moved to Omaha to occupy the same position with the newly incorporated entity. (Following the transfer to Northwestern Archerd has had no further employee or shareholder relationship with Hansen Building, Inc.) On July 14, 1960, Hansen Building, Inc., and Archerd entered into the following agreement:

AGREEMENT between Fred M Archerd as General Manager of, and Hansen Building Specialties, Inc., as owner of stock in the Northwestern Steel and Supply Co.

1. The purpose of this agreement is to provide a compensation to Fred M Archerd in the form of stock over a period of ten years to the maximum extent of 25% of all outstanding stock provided that in that period, the total operating profits of the company are at least equal to the initial purchase price paid by Northwestern Steel and Supply Co. to Mr. G C Olson or estate.

2. Definition of profit used in this computation will be that after Federal Income Tax, but before dividends and without consideration of any drawings of other stockholders other than expenses.

3. At the end of each fiscal year, the amount of profit as difined [sic] in paragraph 2 shall be computed as a percentage of the purchase price, and the result divided by four thus determining the equity owing to Fred M. Archerd for that year.

4. In addition to the stock, a cash payment will be made to Fred M Archerd to an amount calculated sufficient to pay his personal Federal Income Tax based on total income from Northwestern Steel and Supply Co. in salary and stock payments, the amount to be that required in addition to tax withheld.

5. The remainder of bonus not equal to one full share may be carried forward to the next year or may be added to by cash by Fred M Archerd to complete purchase of that share.

6. In the event of separation from employment for any reason, Fred M Archered [sic] agrees to offer to sell to Hansen Building Specialties, Inc., his

stock of Northwestern Steel and Supply Co. at its book value as of the end of the latest fiscal year.

7. This agreement expires April 20, 1970.

(S) Fred M. Archerd
FRED M. ARCHERD

HANSEN BUILDING SPECIALTIES, INC.
(S) James T. Hansen
JAMES T. HANSEN
*Secretary-Treasurer*
(Corporate Seal Hansen Building Specialties, Inc., Hastings, Neb.)

The agreement was prepared without advice of legal counsel. Hansen executed the document as an officer of and on behalf of Hansen Building, Inc. In executing the agreement Hansen and Archerd intended and understood that the shares which Archerd might acquire would be issued by Northwestern as newly issued stock.

On December 22, 1960, Hansen and Archerd executed an endorsement upon the reverse side of the July 14 agreement. It reads as follows:

DECEMBER 22, 1960

ENDORSEMENT NUMBER VL [sic]

This agreement does not apply to Northwestern Steel and Supply Company stock as covered by certificate number 3 dated October 1, 1960 (10 shares).

(S) FRED M. ARCHERD     (S) JAMES T. HANSEN

Pursuant to the agreement the following number of shares of stock were issued by Northwestern to Archerd.

| Date | Number of shares | Date | Number of shares |
|---|---|---|---|
| 12/31/60 | 10 | 6/28/65 | 13 |
| 7/31/61 | 8 | 7/1/66 | 17 |
| 7/31/62 | 6 | 6/30/67 | 45 |
| 7/31/63 | 9 | 8/16/68 | 38 |
| 10/27/64 | 7 | | |

There were no endorsements or restrictions on the face of the stock certificates issued to Archerd. Archerd, in 1966 and 1968, listed the stock as an asset in applying for a loan.

On the dates indicated below, all of Northwestern's outstanding stock was owned as follows (including 10 shares initially acquired by Archerd):

| Date | Stockholder | Number of shares | Percentage of ownership |
|---|---|---|---|
| 12/31/65 | Hansen Building Specialties, Inc. | 600 | 90 |
| | Fred M. Archerd | 63 | 10 |
| 12/31/66 | Hansen Building Specialties, Inc. | 600 | 88 |
| | Fred M. Archerd | 80 | 12 |
| 12/31/67 | Hansen Building Specialties, Inc. | 600 | 83 |
| | Fred M. Archerd | 125 | 17 |
| 12/31/68 | Hansen Building Specialties, Inc. | 600 | 79 |
| | Fred M. Archerd | 163 | 21 |

Archerd was an employee of Northwestern until April 30, 1969, at which time he voluntarily resigned for personal reasons. On September 30, 1969, an agreement was executed between Archerd and Northwestern which provided in pertinent part as follows:

WHEREAS, Archerd has been an employee, officer and director of the Company since the Company's commencement on April 18, 1960; that Archerd resigned and terminated his employment and affiliation with the Company on March 31, 1969 but agreed to remain in employment through April 30, 1969; that Archerd's termination has been complete since April 30, 1969.

That Archerd was the owner of one hundred sixty-three (163) shares of common stock of the Company; that an agreement existed, dated July 14, 1960, providing for Archerd's sale of stock in event of termination of his employment.

That an agreement has been reached between the parties concerning the sale of the stock and other conditions attached thereto, all of which is the basis of this agreement.

FOR A VALUABLE CONSIDERATION and the mutual promises and agreements of the parties hereto, it is agreed as follows:

1. That Archerd hereby agrees to sell the 163 shares of common stock to the Company as treasury stock for the total price of Fifty Seven Thousand Five Hundred Eighty and 58/100 ($57,580.58) Dollars, payable as follows: * * *

Archerd's 163 shares of stock were redeemed in compliance with the above agreement and were subsequently canceled by Northwestern.

Each petitioner claimed a separate surtax exemption on its Federal income tax returns for the years in issue. The respondent determined that the petitioners were component members of a parent-subsidiary controlled group and divided one surtax exemption equally between them pursuant to section 1561(a)(1).

OPINION

The issue presented for our consideration is whether petitioners, Hansen Building, Inc., and Northwestern, during the years in issue, were a parent-subsidiary controlled group of corporations as defined in section 1563 [2] and thus limited by the language of section 1561 [3] to one surtax exemption.

---

[2] SEC. 1563. DEFINITIONS AND SPECIAL RULES.

(a) CONTROLLED GROUP OF CORPORATIONS.—For purposes of this part, the term "controlled group of corporations" means any group of—

(1) PARENT-SUBSIDIARY CONTROLLED GROUP.—One or more chains of corporations connected through stock ownership with a common parent corporation if—

(A) stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of each of the corporations, except the common parent corporation, is owned (within the meaning of subsection (d)(1)) by one or more of the other corporations; and

(B) the common parent corporation owns (within the meaning of subsection (d)(1)) stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of at least one of the other corporations, excluding, in computing such voting power or value, stock owned directly by such other corporations.

[3] SEC. 1561. SURTAX EXEMPTIONS IN CASE OF CERTAIN CONTROLLED CORPORATIONS. (Effective with respect to taxable years beginning before Jan. 1, 1975.)

Respondent asserts that for the period before us Hansen Building, Inc., owned at least 80 percent of Northwestern's stock, and therefore the above-noted statutory requirements are applicable. Petitioners, on the other hand, contend otherwise, pointing in support of their contrary position to section 1563 (e) (1), which states:

> (e) CONSTRUCTIVE OWNERSHIP.—
>
>   (1) OPTIONS.—If any person has an option to acquire stock, such stock shall be considered as owned by such person. For purposes of this paragraph, an option to acquire such an option, and each one of a series of such options, shall be considered as an option to acquire such stock.

From the above provision petitioners argue that since Archerd held an option to acquire sufficient stock from Northwestern to give him a 25-percent equity interest in Northwestern, Hansen Building, Inc.'s stock interest is commensurately reduced to 75 percent thereby preventing application of section 1563.

We hold for respondent. In our view petitioners are looking at constructive ownership from the wrong end of the tunnel. Section 1563 (e) (1), as well as the other constructive ownership provisions included throughout the Code, are applicable solely to determine the stock ownership of the shareholder being scrutinized, and were never intended to dilute another shareholder's percentage of actual ownership.[4] Such is apparent both from section 1563 itself and its legislative history as well as the analogous attribution provisions found in other sections of the Code.

Paraphrasing the significant portions of the statute, section 1563 (a) (1) (B) requires that the common parent corporation (Hansen Building, Inc.) own, as defined in subsection (d) (1), 80 percent of the total voting power or 80 percent of the total value of all stock of the subsidiary corporation (Northwestern). Subsection 1563 (d) (1) provides that for purposes of determining whether a corporation is a member of a parent-subsidiary controlled group, stock owned by a corporation means (1) stock actually owned by such corporation and (2) stock con-

---

(a) GENERAL RULE.—If a corporation is a component member of a controlled group of corporations on a December 31, then for purposes of this subtitle the surtax exemption of such corporation for the taxable year which includes such December 31 shall be an amount equal to—

  (1) $25,000 divided by the number of corporations which are component members of such group on such December 31, or

[4] "[T]he application of many of the substantive provisions of the Internal Revenue Code of 1954 depends upon the extent of a taxpayer's ownership of stock in a corporation. To prevent avoidance of these provisions the tax law has devised rules regarding attribution or constructive ownership of stock." Ringel, Surrey and Warren, "Attribution of Stock Ownership in the Internal Revenue Code," 72 Harv. L. Rev. 209 (1958). See, for example, H. Rept. No. 1337, 83d Cong., 2d Sess., p. 36 (1954). Clearly constructive ownership was created to increase ownership, so as to prevent tax avoidance, not decrease it.

structively owned by the corporation under subsection (e) (1).[5] Subsection 1563 (e) (1) states that if any person has an option to acquire stock such stock is considered owned by that person.

The option provision of subsection (e) (1) is applicable in the instant case only through subsection (d) (1) and subsection (d) (1) is relevant solely as required in subsection (a) (1). In short this constructive ownership rule, as well as the other enunciated provisions, is applicable solely to determine whether one corporation owns 80 percent of the stock of another.[6]

The terms of section 1563(f) (3) (B) add further support to our conclusion when it states:

If stock is owned * * * [actually or constructively] [7] by two or more persons, such stock shall be considered as owned by the person whose ownership of such stock results in the corporation being a component member of a controlled group. If by reason of the preceding sentence, a corporation would (but for this sentence) become a component member of two controlled groups, it shall be treated as a component member of one controlled group. * * *

Thus it is apparent that, while stock may be owned both actually and constructively by two persons, the ownership of one will not reduce the other's interest but rather will be artificially considered as owned by the person whose stock ownership would create a controlled group.

Additional sustenance for our position is reflected in the legislative history applicable to section 318 which demonstrates by example the above-noted principles. It states:

if an individual, H, owns 20 of the 100 outstanding shares of stock of a corporation, his wife, W, owns 20 shares of such stock, his son, S, owns 20 of such shares and his grandson, G, owns 20 of such shares, H will be deemed to own 80 of such shares. W likewise will be deemed to own 80 of such shares as will also S. However, the grandson will be deemed only to own 40 of such shares, that is, his own and his father's. [S. Rept. No. 1622, 83d Cong., 2d Sess., p. 253 (1954).]

---

[5] The option provision is the only constructive ownership rule applicable in the parent subsidiary controlled group. In the brother-sister relationship all the provisions of subsec. 1563(e) are relevant.

[6] The House Ways and Means Committee in its committee reports stated:

"While your committee recognizes the importance to small business of reducing the tax on the first $25,000 of income from 30 to 22 percent, it also recognizes that this substantial tax reduction should not provide added inducement to existing medium and large corporations to split up into multiple corporations. Therefore, your committee has limited the benefits of the tax reduction in cases where a parent corporation owns or controls one or more other corporations. * * * [H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 240–242.]"

The committee in their technical explanation went on to state:

"(d) *Rules for determining stock ownership.*—Paragraph (1) of section 1563(d) provides the rules of stock ownership used in determining whether a corporation is a member of a parent-subsidiary controlled group of corporations (within the meaning of sec. 1563(a)(1)). Paragraph (1) provides that stock owned by a corporation means the stock owned directly by such corporation and also any stock which such corporation has an option to acquire (within the meaning of sec. 1563(e)(1)). * * * [Technical Explanation of the Bill, H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part 2) 454.]"

[7] The statute states, "If stock is owned (within the meaning of subsection (d)) * * *" and subsec. (d) includes actual and constructive ownership.

See also secs. 1.318–2, 1.267(c)–1(b), example 1, 1.1563–3(b) (6)(iv), Income Tax Regs. This same principle should logically apply to the option attribution provisions as well. Thus, if X corporation owns 80 percent of the stock of M corporation and Y corporation owns 20 percent with an option to acquire an additional 20 percent from X, Y is considered to own 40 percent of the outstanding stock but X is also considered to own 80 percent of the outstanding stock. See *Friend* v. *United States*, 345 F. 2d 761 (C.A. 1, 1965) ; secs. 1.302–3(a), 1.318–3 (c), and 1.1563–3(b), Income Tax Regs. See also 27th N.Y.U. Tax Inst. 818–819 (1969).

In the instant case we are concerned solely with the percentage of equity held by Hansen Building, Inc. Therefore the stock ownership of Archerd, be it actual or constructive, is of no import, and even if it were it would not reduce the stock owned by Hansen Building, Inc.

We further emphasize that the principles set out above are not held less applicable simply because the option relates to stock yet unissued rather than outstanding shares. Constructive ownership is applied on an individual basis affecting only that shareholder's interest. This should be the case regardless of what "stock" is constructively attributable. Thus in the instant case, since we are concerned solely with Hansen Building, Inc.'s corporate interest in Northwestern, Archerd's option to acquire unissued stock does not increase the outstanding stock as to other shareholders and thereby does not reduce Hansen's percentage of stock ownership.[8]

We recognize that this Court in *J. Milton Sorem*, 40 T.C. 206 (1963), reversed on another issue 334 F. 2d 275 (C.A. 10, 1964), faced with a 302 redemption subject to the section 318 constructive-ownership rules, noted that an option to acquire yet unissued stock.was considered outstanding stock for purposes of determining the interest of the nonoptionee shareholder. However, this conclusion was not relevant to the Court's decision and was merely mentioned in passing in a footnote. It is therefore our determination that such a result is not controlling.[9] See and compare *Bloch* v. *United States*, 261 F. Supp. 597, 605 (S.D. Tex. 1966), affirmed per curiam 386 F. 2d 839 (C.A. 5, 1967).

Having determined that the percentage of stock ownership held by Hansen Building, Inc., is unaffected by Archerd's option, and further

---

[8] If the stock ownership of Archerd were in question, as for example, a 302 redemption, and assuming the option provisions were applicable so as to treat Archerd as the owner of the optioned stock, such stock would increase the number of shares deemed to be held by him and it would also, as to Archerd alone, increase the number of shares deemed outstanding.

[9] In Rev. Rul. 68–601, 1968–2 C.B. 124, 126, the Service refused to follow *Sorem,* and they stated :

"the Service will not follow the case of *J. Milton Sorem, et al.* v. *Commissioner,* 334 F. 2d 275 (1964), reversing and remanding 40 T.C. 206 (1963), in regard to the issue of including

that as of December 31 of the years in issue [10] Hansen Building, Inc., held 80 percent or more of Northwestern's outstanding stock, we conclude that a parent-subsidiary controlled group does in fact exist and therefore the two corporations are entitled to only one surtax exemption.

Reviewed by the Court.

*Decision will be entered for the respondent.*

in the total outstanding stock of the corporation options held by persons whose stock was not held directly nor indirectly by the redeeming shareholders."

Further, the committee on Affiliated and Related Corporations of the Tax Section of the American Bar Association, with regard to this issue, noted:

"It was suggested that * * * in computing the constructive stock ownership of a non-optionee, *all* such unissued stock subject to options should be treated as outstanding. *Cf. Sorem* v. *C.I.R.,* 334 F. 2d 275 (10th Cir. 1964). The committee felt, however, that such suggestions constituted too drastic a change in present concepts * * *. [ABA Section of Taxation Bulletin, July 1967, p. 24.]"