NORTH AMERICAN INDUSTRIES, INC., [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent AIR AG, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
North American Industries, Inc. v. Commissioner
Docket Nos. 7552-73, 7553-73.
United States Tax Court
T.C. Memo 1974-276; 1974 Tax Ct. Memo LEXIS 41; 33 T.C.M. (CCH) 1275; T.C.M. (RIA) 740276; October 24, 1974, Filed. H. H. Hayner, for the petitioners. Matthew W. Stanley, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in the petitioners' Federal income tax as follows: Deficiency
Docket No.
1970
1971 7552-73
$3,331.25
$3,250.00
7553-73
2,414.06
4,723.99
The parties have settled some of the issues raised by the deficiency notices. The only issue remaining for decision is whether petitioners during the years involved were component members of a controlled group of corporations under the applicable version of section 1561. [2]
FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation and attached exhibits are incorporated herein by this reference. Petitioners, North American Industries, Inc. (North American) and Air Ag, Inc. (Air Ag), are both corporations organized under the laws of the state of Washington. *45 During the taxable years 1970 and 1971, each maintained its principal place of business at Walla Walla, Washington.Their Federal corporate income tax returns for the taxable years ending December 31, 1970, and December 31, 1971, were filed with the Western Service Center, Ogden, Utah. At all times pertinent to these cases, all of the issued and outstanding stock of Air Ag was owned by Dale Tillay. On December 31, 1969, and December 31, 1970, 100 shares of North American stock of $50 par value were issued and outstanding. Of that number, 78 shares were owned by Dale Tillay, 11 shares were owned by Robert Forsyth, and 11 shares were owned by Wayne Tillay. The authorized capital of North American was $50,000, divided into 1,000 shares of $50 par value each. Forsyth was employed by Dale Tillay or by Air Ag beginning in March, 1964. His employment continued until January, 1966, when he was drafted into the Army. On his release from the Army in January, 1968, he returned to work and took the position of business manager of Air Ag. At the time of trial, he was manager and secretary-treasurer of both Air Ag and North American. He was employed at will and not from year to year. *46 Forsyth was paid a salary by Air Ag of $500 per month in 1968, $700 per month in 1969, and $1,000 per month in 1970 and 1971. He received a bonus each year he was employed from 1964 through 1969. He was paid a bonus of $1,200 in 1969, but none in 1970 or 1971. All bonuses were paid at the discretion of Dale Tillay. At various times prior to December, 1970, Forsyth discussed with Dale Tillay Forsyth's desire to find other employment where he could have "a piece of the action." However, he never told Tillay of an actual intention to leave his job. In December, 1970, Tillay asked Forsyth if he would be willing to forgo his annual bonus in exchange for an option to buy additional stock. Tillay wanted to give Forsyth an inducement to remain; North American was also in need of additional capital. Up to that time, Forsyth had not been informed that he would receive a bonus for that year. On December 31, 1970, a special meeting of the board of directors of North American was held. The directors took the following action, as reported in the minutes of the meeting: Secretary Forsyth noted that the bank balance was considerably short to cover the financial obligations of the *47 corporation and that we needed financial help. Dale Tillay agreed to loan the corporation $50,000.00. Robert Forsyth moved that the corporation borrow the money from Dale Tillay. The motion was seconded and approved. The subject of cash flow and adequate financing was further discussed and it was felt that we (the corporation) should sell some stock to improve the financial condition of the company. It was moved, seconded and approved to enter into a stock option agreement with Robert J. Forsyth in which he will be entitled to purchase up to an additional 60 shares of stock. A "Stock Option Agreement" was approved by the directors of North American on January 28, 1971, and by the shareholders on February 9, 1971. It recites: North American Industries, Inc., agrees to sell to Robert J. Forsyth up to 60 shares of stock. The price of the stock shall be determined by the net worth of the corporation as shown on the balance sheet at the beginning of the calendar year in which the option is exercised less 15% based on the uncertainty of new products and the uncertain continuance of the primary product without competition. The stock option was exercised in part by Forsyth on *48 December 26, 1972, when he purchased 26 shares.On that same date, 30 shares of stock were sold to Florence Saxby. On and after December 26, 1972, 156 shares of North American were issued and outstanding. Of that number, 78 shares were owned by Dale Tillay, 37 shares were owned by Forsyth, 30 shares were owned by Florence Saxby, and 11 shares were owned by Wayne Tillay. OPINION Respondent determined that petitioners, North American and Air Ag, were component members of a brother-sister controlled group of corporations for the taxable years 1970 and 1971. Accordingly, as required by section 1561, [3] he allowed each petitioner a surtax exemption of only $12,500 per year. Petitioners contest this determination. *49 Section 1563 defines the terms "brother-sister controlled group" and "component member." Pertinent provisions are set out in the margin. [4]
*50 Section 1563(a) (2) establishes two tests for determining whether two or more related corporations make up a brother-sister controlled group. Five or fewer persons must own stock possessing altogether at least 80 percent of the voting power or 80 percent of the value of all the stock of each corporation. In addition, the respective stockholders' common ownership in all of the corporations in the group must add up to more than 50 percent in terms of value or voting power. On December 31, 1970 and December 31, 1971, the issued and outstanding stock of petitioners was held as follows: Air Ag
North American Dale Tillay
100%
78%
Robert Forsyth
11%
Wayne Tillay
11%
The 80 percent test of section 1563(a) (2) (A) is unquestionably met; among them, these persons owned 100 percent of each corporations stock. Section 1563(a) (2) (B) is also apparently satisfied, since Dale Tillay's ownership of both corporations was identical to the extent of 78 percent. Petitioners, however, seek to invoke the attribution rule of section 1563(e) (1) in support of a different result. Section 1563(d) (2) requires the application of section 1563(e) in determining stock *51 ownership. Petitioners argue that Forsyth had an option to acquire 60 shares of North American as of December 31, 1970; that under section 1563(e) (1) he must be considered as owning those shares; and that Dale Tillay's ownership of the corporation is, therefore, not considered to be 78 percent (78 of 100 shares), but 48.75 percent (78 of 160 shares). Consequently, say petitioners, no controlled group existed on December 31 of either year and respondent's disallowance of multiple surtax exemptions was unjustified. We find no merit in this argument. It is unnecessary for us to decide issues raised by the parties as to the validity of the option and the date of its creation. [5] It is undisputed that at all times up to and including December 31 of each of the taxable years before us the option remained unexercised. On these facts, the matter is controlled by our decision in Northwestern Steel & Supply Co., 60 T.C. 356 (1973). In that court-reviewed opinion, we considered the effect on sections 1563(a) (2) and 1563(d) (1) of an employee's option to buy unissued stock of a subsidiary corporation. We held that the attribution of stock to one shareholder could not be used *52 to reduce the percentage ownership of the other shareholders. Petitioners have not suggested any reason for applying section 1563(e) differently in determining stock ownership of a brother-sister rather than a parent-subsidiary group, and indeed have not attempted to distinguish Northwestern Steel & Supply Co., supra, on any ground. In addition, we agree with respondent's alternate argument that the constructive ownership provisions of section 1563(e) apply only to outstanding stock. Section 1563(c) provides, for the purposes of sections 1561 through 1564, that the term "stock" does not include "treasury stock." If "treasury stock," which is issued, but not "outstanding," is not considered "stock" for the purpose of section 1561 et seq., a fortiori, stock which is authorized but neither issued nor outstanding should not be so considered. [6]
*53 Petitioners finally argue that, if we hold them entitled to only one surtax exemption, they should be allowed to choose the way in which the exemption is allocated between them. It is unclear how such an allocation could benefit petitioners in this proceeding, since both apparently had taxable income well in excess of the $12,500 surtax exemption permitted for each by respondent. In any event, petitioners have adduced no evidence showing the existence of an apportionment plan in compliance with section 1561(a) (2) and section 1.1561-3, Income Tax Regs. If they can show compliance with the statute and its implementing regulations, [7] they may be entitled to make an allocation different from that determined by respondent in connection with a computation provided for in Rule 155 of the Rules of Practice and Procedure of this Court. To that end, Decision will be *54 entered under Rule 155. Footnotes
1. These cases were consolidated for trial and opinion. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
3. SEC. 1561. SURTAX EXEMPTIONS IN CASE OF CERTAIN CONTROLLED CORPORATIONS. (a) General Rule. - If a corporation is a component member of a controlled group of corporations on a December 31, then for purposes of this subtitle the surtax exemption of such corporation for the taxable year which includes such December 31 shall be an amount equal to - (1) $25,000 divided by the number of corporations which are component members of such group on such December 31, or (2) if all such component members consent (at such time and in such manner as the Secretary or his delegate shall be regulations prescribe) to an apportionment plan, such portion of $25,000 as is apportioned to such member in accordance with such plan. The sum of the amounts apportioned under paragraph (2) among the component members of any controlled group shall not exceed $25,000. * * * ↩
4. SEC. 1563. DEFINITIONS AND SPECIAL RULES. (a) Controlled Group of Corporations. - For purposes of this part, the term "controlled group of corporations" means any group of - * * * (2) Brother-sister controlled group. - Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d) (2)) stock possessing - (A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and (B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation. * * * (b) Component Member. - (1) General rule. - For purposes of this part, a corporation is a component member of a controlled group of corporations on a December 31 of any taxable year (and with respect to the taxable year which includes such December 31) if such corporation - (A) is a member of such controlled group of corporations on the December 31 included in such year and is not treated as an excluded member under paragraph (2), or (B) is not a member of such controlled group of corporations on the December 31 included in such year but is treated as an additional member under paragraph (3). (2) Excluded members. - A corporation which is a member of a controlled group of corporations on December 31 of any taxable year shall be treated as an excluded member of such group for the taxable year including such December 31 if such corporations - (A) is a member of such group for less than one-half the number of days in such taxable year which precede such December 31, (B) is exempt from taxation under section 501(a) (except a corporation which is subject to tax on its unrelated business taxable income under section 511) for such taxable year, (C) is a foreign corporation subject to tax under section 881 for such taxable year, (D) is an insurance company subject to taxation under section 802 or section 821 (other than an insurance company which is a member of a controlled group described in subsection (a) (4), or (E) is a franchised corporation, as defined in subsection (f) (4). (3) Additional members. - A corporation which - (A) was a member of a controlled group of corporations at any time during a calendar year, (B) is not a member of such group on December 31 of such calendar year, and (C) is not described, with respect to such group, in subparagraph (B), (C), (D), or (E) of paragraph (2), shall be treated as an additional member of such group on December 31 for its taxable year including such December 31 if it was a member of such group for one-half (or more) of the number of days in such taxable year which precede such December 31. * * * (c) Certain Stock Excluded. - (1) General rule. - For purposes of this part, the term "stock" does not include - * * * (B) treasury stock, * * * * * * (d) Rules for Determining Stock Ownership. - * * * (2) Brother-sister controlled group. - For purposes of determining whether a corporation is a member of a brother-sister controlled group of corporations (within the meaning of subsection (a) (2)), stock owned by a person who is an individual, estate, or trust means - (A) stock owned directly by such person, and (B) Stock owned with the application of subsection (e). (e) Constructive Ownership. - (1) Options. - If any person has an option to acquire stock, such stock shall be considered as owned by such person. For purposes of this paragraph, an option to acquire such an option, and each one of a series of such options, shall be considered as an option to acquire such stock. * * * ↩
5. We also note only in passing that even if all of petitioners' arguments were sustained, they would still be component members of a controlled group for 1970 by virtue of sections 1563(b) (1) (B) and (b) (3), a fact apparently overlooked by respondent. ↩
6. In so holding, we deal only with sections 1561 through 1564, noting that a different result may obtain, for the purposes of a section 302 redemption, in respect of increasing the percentage of stock owned by the person whose shares are being redeemed and who has an option to acquire additional shares which are neither issued nor outstanding. See Northwestern Steel & Supply Co., 60 T.C. 356↩ (1973), at 363, n. 8.
7. Perhaps petitioners are referring to the election to pay the additional 6 percent tax in order to use the surtax exemption pursuant to section 1562, as modified for taxable years after 1969 by transitional rules contained in section 1564, enacted as part of the Tax Reform Act of 1969 (P.L. 91-172, 83 Stat. 487). ↩